IN RE CHANGE OF NAME OF AUDREY JOY ANDREWS AND HOLLY FAE ANDREWS, MINORS, BY AND THROUGH THEIR MOTHER AND NEXT FRIEND, LORI S. ANDREWS, NOW KNOWN AS LORI S. BRYDL. AUDREY JOY ANDREWS AND HOLLY FAE ANDREWS, BY AND THROUGH THEIR MOTHER AND NEXT FRIEND, LORI S. ANDREWS, NOW KNOWN AS LORI S. BRYDL, APPELLANTS, V. KIM L. ANDREWS, APPELLEE.

454 N.W.2d 488

Filed April 26, 1990.   No. 88-276.

Robert R. Otte, of Hecht, Sweet, Alesio, Morrow, Poppe & Otte, P.C., for appellants.

Michael L. Cruise for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The district court for Lancaster County authorized Lori S. Andrews to change her surname to "Brydl," but denied Brydl's petition, as next friend, to change the surname of her minor daughters, Audrey Joy and Holly Fae, from "Andrews" to "Brydl-Andrews." Brydl contends that she sustained her burden to prove that the requested name change was in the best interests of her daughters, of whom Brydl has custody as the result of the dissolution of her marriage with Kim L. Andrews.

Brydl and her former husband, Andrews, are the parents of twin daughters, Holly Fae Andrews and Audrey Joy Andrews, who were born on January 4, 1986. During her marriage of 5 1/2 years to Andrews, Brydl went by "Lori Andrews," and the twins, as reflected on their birth certificates, bore the surname "Andrews" as well. Under a marital dissolution decree entered on August 13, 1987, Brydl was granted custody of the twins subject to the child visitation right of Andrews, who frequently visited his daughters and paid child support in accordance with the decree. Additionally, Andrews maintained medical insurance for the twins, who were also beneficiaries under a policy of insurance on Andrews' life.

In November 1987, Brydl, then bearing the surname

"Andrews" from her marriage, commenced a separate action pursuant to Neb. Rev. Stat. §§ 61-101 and 61-102 (Reissue 1986) to have her premarital name, "Brydl," restored to her and, further, to change the surname of her daughters from "Andrews" to "Brydl-Andrews." Andrews objected to the change of his children's surname, alleging that the "hyphenated last names are unnecessarily burdensome, confusing, unnecessary and promotes nothing beneficial for the children."

At the trial on January 27, 1988, Brydl testified that she wanted the name change for her daughters, then 2 years of age, because she wanted them to identify with her in reference to the name "Brydl" and to appreciate their Czech ancestry and heritage. Also, Brydl wanted the name change to eliminate possible confusion, such as might exist in the children's medical records, as a result of the difference between Brydl's premarital surname and her marital surname, "Andrews." Brydl acknowledged that if she were to remarry, her marital surname would involve a hyphen between "Brydl" and her subsequent spouse's surname, or, as Brydl expressed: "I would keep Brydl and go Brydl dash whatever." In the event of Brydl's remarriage, the twins' surname would remain "Brydl-Andrews" in accordance with a judgment authorizing such change in the children's surname.

Brydl called as a witness Dr. Rick McNeese, a psychologist who specialized in behavioral family practice, a specialty in which Dr. McNeese "deal[t] with a wide range of problems that occur within a family context, from child problems, adolescent, adult into geriatrics. . . . [A] particular orientation where you look at the interaction between people and their environment." According to Dr. McNeese, 2-year-old children, such as Audrey Joy and Holly Fae, are too young to identify with a specific surname. When asked whether a hyphenated surname would be in the best interests of the twins, Dr. McNeese stated:

> What's important, what would be the best interest of the children, I think is anything that will facilitate the attachment of the child to both parents and I think in this case, that type of name arrangement would be a factor that would work in the direction of the children's best interest.

. . . .

. . . [W]hat's important to the child's interest is the attachment that child has to both parents. Any factor that can facilitate that is going to be important. . . . I think in this case, the name change is one of those factors that would contribute to that overall development of attachment which later on then provides a basis for curiosity and development of atonomy [sic], self-concept and self-esteem.

Dr. McNeese further testified that the hyphenated name change would have no effect on the relationship between the twins and their father, would help the girls identify more readily with their mother, and would allow the children to form an attachment with their mother, which would result in their "independence and security and identity." In this manner, the children will establish a "self-concept, who they are as a person . . . ."

Andrews testified that if his daughters have the hyphenated surname "Brydl-Andrews," he would not love them any less, but believed that Brydl was seeking the name change to distance Andrews from his children.

The district court found that Brydl was entitled to change her surname from "Andrews" to "Brydl," but concluded that Brydl had failed to meet her burden of proof that the requested change in the twins' surname would be in the best interests of the children.

We find no Nebraska statute, as an expression of state policy, which precludes the use of a hyphenated surname for a Nebraska-born child.

The vast majority of judicial decisions expressing a denial of a requested change in a minor's surname have arisen out of a factual setting wherein a divorced mother has remarried and sought to change her child's or children's surname from that of the mother's previous spouse to the surname of the mother's subsequent spouse, that is, the surname of the child's or children's stepfather. For example, in *Spatz v. Spatz,* 199 Neb. 332, 258 N.W.2d 814 (1977), this court rejected a request by a mother, who was the custodial parent as the result of a marital dissolution, to change the surname of her children to Laflan, her subsequent husband's surname, because the changed

surname would result in the children's no longer bearing their father's surname. Courts in other jurisdictions have recognized that a father, as a noncustodial parent on account of a marital dissolution, has an interest in his child's retention of the paternal surname notwithstanding the surname of the child's stepfather. See, *Beyah v. Shelton*, 231 Va. 432, 344 S.E.2d 909 (1986); *Azzara v. Waller*, 495 So. 2d 277 (Fla. App. 1986); *Petition of Meyer*, 471 N.E.2d 718 (Ind. App. 1984); *In re Marriage of Omelson*, 112 Ill. App. 3d 725, 445 N.E.2d 951 (1983); *Application of Tubbs*, 620 P.2d 384 (Okla. 1980); *In re Application of Robinson for Change of Names*, 302 Minn. 34, 223 N.W.2d 138 (1974); Annot., 92 A.L.R.3d 1091 (1979).

However, the case now before us does not involve a requested or prospective abolition of a noncustodial father's surname in relation to the father's child. Rather, Brydl wants to add her premarital surname to the twins' current surname, which is the surname of Brydl's former spouse and the father of Brydl's children, and does not seek elimination of the name "Andrews" in reference to the twins' surname. Consequently, the proposed and requested change in the children's surname, namely, "Brydl-Andrews," reflects both maternal and paternal surnames.

"At common law, the interest of a father in having his child bear his surname was one of inherent concern. The custom of patrilineal succession dates back many centuries." *Cohee v. Cohee*, 210 Neb. 855, 857, 317 N.W.2d 381, 382 (1982). The reason most often given for a child's retention of the paternal surname is the need to preserve the father-child bond. *Rio v. Rio*, 132 Misc. 2d 316, 504 N.Y.S.2d 959 (1986). See, also, *In re Marriage of Presson*, 102 Ill. 2d 303, 465 N.E.2d 85 (1984); *West v. Wright*, 263 Md. 297, 283 A.2d 401 (1971). However, today's trend is toward parental and marital equality in reference to children, as typified by and reflected in legislative expressions that parental gender is excluded from consideration in determining a child custody issue; for example, see Neb. Rev. Stat. § 42-364(2) (Reissue 1988):

> In determining with which of the parents the children or any of them shall remain, the court shall not give preference to either parent based on the sex of the parent,

and no presumption shall exist that either parent is more fit to have custody of the children than the other.

Thus, many courts have held that neither parent has a superior right in the determination of the surname for the parents' child. See, *Rio v. Rio, supra*; *Application of Rossell by Yacono*, 196 N.J. Super. 109, 481 A.2d 602 (1984) (parents have equal rights in determining their child's surname); *Daves v. Nastos*, 105 Wash. 2d 24, 711 P.2d 314 (1985) (even in a filiation proceeding, neither parent has a superior right to determine the child's name); *Jacobs v. Jacobs*, 309 N.W.2d 303 (Minn. 1981); *In re Marriage of Schiffman*, 28 Cal. 3d 640, 620 P.2d 579, 169 Cal. Rptr. 918 (1980) (a father's right to name his child is abolished as the primary determinant for a child's surname). As this court recognized and stated in *Cohee v. Cohee, supra* at 860, 317 N.W.2d at 384: "No automatic preference as to the surname of a legitimate child now exists in Nebraska law. We believe each parent has an equal right and interest in determining the surname of a child."

Courts in other jurisdictions have recognized a mother's interest in her child's or children's bearing the mother's premarital or maiden surname. See, *Jacobs v. Jacobs, supra*; *Application of Rossell by Yacono, supra*; *State ex rel. Spence-Chapin Services v. Tedeno*, 101 Misc. 2d 485, 421 N.Y.S.2d 297 (1979); *Daves v. Nastos, supra*.

> In recognizing a father's right to have his child bear his surname, courts largely have ignored the impact a name may have on the mother-child relationship. Perhaps that is because mothers, usually given custodial preference in the past, generally had more regular contact and could maintain a psychological relationship without the need for the tie a surname provides. However, "the maternal surname might play a significant role in supporting the mother-child relationship, for example, in the cases where the father is the custodial parent or where the custodial mother goes by her birth-given surname."

(Emphasis omitted.) *In re Marriage of Schiffman, supra* at 647, 620 P.2d at 584, 169 Cal. Rptr. at 923.

Whether a minor child's surname may be changed depends on, and is determined by, the best interests of the child. *Cohee v.*

*Cohee, supra; Spatz v. Spatz,* 199 Neb. 332, 258 N.W.2d 814 (1977). Thus, best interests of a child are the determinant for change of a child's surname much in the same manner as a child's best interests relate to child custody and parental visitation involved in a marital dissolution proceeding. See, § 42-364 (child custody determination and best interests of a child); *Gerber v. Gerber,* 225 Neb. 611, 407 N.W.2d 497 (1987). Consequently, appellate review of a trial court's decision concerning a requested change in the surname of a minor is a trial de novo on the record, wherein the appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, when credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to the fact, that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Cain v. Cain,* 226 Neb. 203, 410 N.W.2d 476 (1987); *Cohee v. Cohee,* 210 Neb. 855, 317 N.W.2d 381 (1982).

In *Spatz v. Spatz, supra,* this court stated:

The question of whether the name of a minor child should be changed is to be determined by what is in the best interests of the child. The cases which have considered this question have granted a change of name only when the substantial welfare of the child requires that the name be changed. See Annotation, 53 A. L. R. 2d 914. Generally, where the father has supported the children and exercised his visitation rights relief has been denied. A change of name has been granted where the father's name was positively deleterious to the child because of the father's misconduct and notoriety. Generally, minor embarrassment or emotional upset has been held not sufficient to require that a change of name be granted.

. . . "Society has a strong interest in the preservation of the parental relationship. Even though a divorce decree may terminate a marriage, courts have traditionally tried to maintain and to encourage continuing parental relationships. The link between a father and child in circumstances such as these is uncertain at best, and a change of name could further weaken, if not sever, such a

bond."
199 Neb. at 333-34, 258 N.W.2d at 815-16 (quoting from *In re Application of Robinson for Change of Names*, 302 Minn. 34, 223 N.W.2d 138 (1974)).

In *Cohee v. Cohee, supra*, this court approved use of a hyphenated surname for a minor child and concluded that the child's best interests required that the child bear the hyphenated surname Cohee-Dugger, a combination of the mother's premarital or maiden surname and the surname of the child's father. See, also, *Rio v. Rio*, 132 Misc. 2d 316, 504 N.Y.S.2d 959 (1986) (the child's best interests require that the child's name reflect her mother's premarital or maiden name and the surname of the child's father).

In a situation involving a request for a change in the surname of a child whose custody is an aspect of a marital dissolution, this court observed: "[C]ustody, along with the other factors, is to be considered in determining the best interests of the child." *Cohee v. Cohee, supra* at 861, 317 N.W.2d at 384. Consequently, whether a change in a minor's surname is in the best interests of the child may depend on several factors, such as (1) misconduct by one of the child's parents, (2) a parent's failure to support the child, (3) parental failure to maintain contact with the child, (4) the length of time that a surname has been used for or by the child, and (5) whether the child's surname is different from the surname of the child's custodial parent. *Cohee v. Cohee, supra.* Additional factors to be considered regarding a change in a minor child's surname include a child's reasonable preference for a surname; the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; the degree of community respect associated with the child's present surname and the proposed surname; the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and the identification of the child as part of a family unit. *Daves v. Nastos*, 105 Wash. 2d 24, 711 P.2d 314 (1985); *In re Marriage of Schiffman*, 28 Cal. 3d 640, 620 P.2d 579, 169 Cal. Rptr. 918 (1980).

In the light of the foregoing factors, the evidence does not

establish, or even indicate, that Andrews has been guilty of misconduct toward the twins, has failed to support his daughters, or has failed to maintain visitation with them. At the time of trial, "Andrews" had been the children's surname for a period of 2 years, which, according to Dr. McNeese, is too little time for the twins to identify with that surname. Nevertheless, "Andrews" is not the surname of the twins' mother. The proposed change of the children's surname, however, would allow and, according to Dr. McNeese, would foster the twins' affiliation with both parents, who have different surnames. Although the children are too young to indicate a preference for a surname, the uncontradicted testimony of Dr. McNeese tends to establish that a change of the children's surname will be efficacious in the preservation and development of the children's relationship with each parent. Nothing indicates that the proposed name change, as requested, would be harmful to either of the children. Quite to the contrary, according to McNeese, the surname "Brydl-Andrews" will help the twins to identify themselves as a part of a family unit in relation to both sides of their family, maternal and paternal, and will facilitate and nurture the children's attachment to both parents and the families of their parents. Thus, while both Brydl and Andrews recounted the effect of the proposed name change on their individual lives, the testimony of Dr. McNeese remains intact without contradiction that the best interests of the twins are served by use of the hyphenated surname "Brydl-Andrews." As a result of our de novo review of the record, we conclude that the best interests of the children, Audrey Joy and Holly Fae, warrant the surname "Brydl-Andrews" for those children born of the marriage between Brydl and Andrews. Consequently, we reverse the judgment of the district court, which rejected "Brydl-Andrews" as the surname for the children involved in these proceedings, and remand this matter to the district court with direction to enter judgment that the surname of the children involved in these proceedings shall be and is "Brydl-Andrews."

REVERSED AND REMANDED WITH DIRECTION.

BOSLAUGH, J., not participating.