OPINION
Defendant-appellant, Donna Squicciarini, appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, designating plaintiff-appellee, Michael Piper, as residential parent of their son, Anthony Robert Squicciarini, and ordering Anthony's surname be changed from Squicciarini to Piper. We affirm the decision of the trial court.
Anthony was born on April 13, 1996, the issue of an extramarital affair between appellant and Piper.[1] Appellant remained married to John Squicciarini and gave Anthony her married surname, "Squicciarini." Piper's name was not listed on the birth certificate. Appellant has another son, five-year-old Michael Squicciarini.
In August 1996, appellant told her husband that Anthony was probably not his son. In December 1996, appellant initiated genetic testing indicating that Piper is Anthony's biological father.[2] Piper accepted that determination, but remained passive in the matters of child support, medical expenses incurred by reason of the birth, and visitation. Piper maintained a relationship with appellant and occasionally saw Anthony when he visited appellant.
On June 26, 1997, Piper filed a complaint to establish paternity in conjunction with Clermont County Child Support Enforcement Agency. On July 25, 1997, an administrative hearing established Piper as Anthony's father.
In August 1997, appellant separated from her husband and moved out of the marital home with her two sons. At approximately the same time, appellant and Piper agreed on child support and a shared parenting plan without court intervention. Piper paid appellant $800 per month child support and Anthony stayed with Piper every Friday through Sunday. The parenting plan allowed Piper to work four days a week as a pilot and allowed appellant to work on the weekends as a part-time flight attendant. The schedule allowed Anthony to spend time with his half-brother during the week.
On April 13, 1998, appellant filed a motion to: reimburse her for birthing expenses; determine responsibility for medical insurance coverage; establish child support from birth; establish allocation of parenting time; award her custody of Anthony; and establish other parental rights and responsibilities.
On September 4, 1998, Piper filed a motion pursuant to R.C. Chapter 3111 to establish the existence of a parent/child relationship between Anthony and Piper, and to issue a new birth certificate reflecting Piper as the father. On November 29, 1998, Piper filed a motion to: designate Piper as the residential parent; change Anthony's surname on his birth certificate to "Piper;" confirm the parenting agreement; and review the issue of child support. At approximately the same time, appellant and her husband began reconciling their marriage. Appellant testified that she anticipated moving back into the marital home in January 1999.
On December 7, 1998, the trial court held a hearing on the allocation of parental rights and responsibilities, the name change and other matters. In its December 15, 1998 decision and January 5, 1999 entry, the trial court found that it was in the best interest of Anthony to implement a shared parenting plan designating Piper as the residential parent and to change Anthony's surname to "Piper." Appellant appeals this decision presenting two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING THE SHARED PARENTING PLAN PURSUANT TO O.R.C. 3109.04(F) AS IT WAS NOT IN THE BEST INTEREST OF THE MINOR CHILD.
In her first assignment of error, appellant argues that the allocation of parenting time and the designation of Piper as the residential parent was against the manifest weight of the evidence and an abuse of discretion.
R.C. 3109.04 governs a trial court's determination and award of custody. In an action to determine an original allocation of parental rights and responsibilities the trial court must consider all relevant factors, including those set forth in R.C.3109.04(F)(1). The trial court is vested with broad discretion in deciding custody cases and its decision is subject to reversal only upon showing an abuse of discretion. Davis v. Flickinger
(1997), 77 Ohio St.3d 415, paragraph one of the syllabus. "Abuse of discretion" implies an attitude, which is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. No abuse of discretion will be found provided there is a "substantial amount of credible and competent evidence" to support the trial court's findings and such an award will not be reversed as being against the weight of the evidence.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 22-23.
Our review of the record reveals that the trial court carefully considered each of the factors set forth in R.C.3109.04(F)(1)(a)-(j). In its January 5, 1999 entry, the trial court listed its findings pursuant to R.C. 3109.04(F)(1):
(a) Both parties desire to be the residential parent;
 The child was too young to be interviewed by the [court] regarding his wishes;
 The child apparently has a very positive relationship with his older brother; [appellant]'s husband testified in Court that he can treat both children equally, despite the history behind this child's birth;
 (d) The child seemingly thrives in both parties' home and family environments;
 (e) There appear to be no significant mental or physical health issues in either household;
 (f) The parties have, so far, cooperated fully in accommodating the visitation arrangement agreed by the parties;
 (g) [Piper] has faithfully fulfilled his child support obligation;
 (h) There are no criminal convictions or any other legal proceedings involving either party, or [appellant]'s husband, concerning the care and welfare of children;
 (i) * * * there have been no conflicts concerning either party's time with the child;
 (j) Both parties seem to have long-term plans to remain in this geographical area.
Applying these factors and the relevant factors in R.C.3109.04(F)(2),[3] the trial court found that Anthony would benefit from a shared parenting plan. Designating Piper as the residential parent, the trial court stated that:
 [a]lthough this child is blessed with two devoted parents who can ably provide for all his physical, mental and emotional needs, the Court cannot ignore the origin of this child's birth, not on a morality level but on an emotional stability level. [Piper] and his extended family, have been, and continue to provide a healthy and happy environment, with little or no emphasis on his origin. [Appellant] on the other hand, is reestablishing a marriage that faltered, either partly or wholly, because of [appellant]'s relationship with [Piper].
Appellant argues that the trial court's decision placed a disproportionate emphasis on appellant's marriage and on the origin of Anthony, and not enough emphasis on the best interest of Anthony.
Under the "direct adverse impact" test articulated in Rowe v.Franklin (1995), 105 Ohio App.3d 176, discretionary appeal not allowed, 74 Ohio St.3d 1464, the court may consider moral principles, but only in relation to the "direct or probable effect of the parent's conduct on the physical, mental, emotional, and social development of the child." Id. at 179.
The record reveals that during the time of appellant's relationship with Piper, appellant moved out of the marital home and filed for divorce from her husband. After their relationship ended in early 1998, appellant began reconciling with her husband. At the time of the hearing, appellant testified that she plans to move back into the marital home in January 1999. Having reviewed the entire record, we cannot say that that the trial court placed undue emphasis on appellant's home environment. Rather, we find that the trial court considered appellant's home environment only to the extent that it has a direct impact upon Anthony's emotional well being. See Rowe at 179.
Appellant next argues that the trial court failed to consider that she was the primary caretaker during Anthony's tender years when Piper chose not to involve himself in parenting Anthony. While the primary caretaker is a factor to be considered, it is only one of the relevant factors to be considered in a child custody case. Seibert v. Seibert (1990), 66 Ohio App.3d 342, 345. In fact, "no single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances." Suess v. Suess (Oct. 7, 1996), Warren App. No. 96-01-006, unreported, at 6, citing Shippv. Shipp (Jan. 27, 1987), Union App. No. 14-85-26, unreported.
Having reviewed the trial court's decision, we find that the trial court gave appellant's role as primary caretaker of Anthony due consideration by acknowledging that she has been a devoted parent. See Clontz v. Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027, unreported, at 8. At the time of the hearing, Anthony was almost two years and eight months old and appellant was the primary caretaker for Anthony's first sixteen months. During that time, appellant lived with her husband and was provided with a nanny to help care for Anthony and her other son. Since October 1997, appellant and Piper both shared the parenting responsibilities of Anthony. Given all the evidence presented at the hearing, we find that the trial court gave appellant's role as primary caretaker of Anthony due consideration and found it to be insignificant in light of the totality of the circumstances of this case.
Overall, the judgment in this case required distinctions between the credibility of the witnesses best made by the trier of fact. Miller, 37 Ohio St.3d at 74. The trial court had the benefit of observing the demeanor of the parties and their witnesses. "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties * * * cannot be conveyed to a reviewing court by the printed record." Id., quoting Trickey v.Trickey (1952), 158 Ohio St. 9, 13.
Based upon our review of the record, we find that competent, credible evidence supports the trial court's decision for the shared parenting plan designating Piper as residential parent. We therefore conclude that the trial court did not abuse its discretion nor rule against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S REQUEST FOR A NAME CHANGE.
In the second assignment of error, appellant argues that the trial court's decision was based upon insufficient evidence to support a finding that it was in Anthony's best interest to change his surname.
Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name change is in the best interest of the child. Bobo v. Jewell (1988), 38 Ohio St.3d 330,334. In reviewing whether the trial court erred in granting a request to change a child's name, we must defer to the trial court's judgment in assessing the best interest of a child concerning a name change, and its judgment is subject to reversal only upon showing an abuse of discretion. Jarrells v. Epperson
(1996), 115 Ohio App.3d 69, 71.
In the instant case, the trial court properly ordered correction of the child's birth certificate to reflect the true name of the father. Bahring v. Mercer (Aug. 19, 1996), Clermont App. No. CA96-02-023, unreported, at 4. The listing of Piper, the biological father, on the birth certificate is in the child's best interest and is not an abuse of discretion. Id. at 4, 5.
When the court orders the surname of a child changed, this is a different matter. Id. at 5. During the pendency of this appeal, the Ohio Supreme Court decided In re Wilhite, (1999),85 Ohio St.3d 28, wherein the court borrowed from the guidelines set forth in Bobo and In re Change of Name of Andrews (1990),235 Neb. 170, and held that
 "[i]n determining whether a change of a minor's surname is in the best interest of the child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of the family unit; the length of time the child has used the surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest."
 Id.
at paragraph two of the syllabus, citing Bobo at paragraph two of the syllabus, and In re Change of Name of Andrews (1990),235 Neb. 170. Further, courts are
 "to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname" because "the mother has at least an equal interest in having the child bear the maternal surname."
 Bobo at 334.
Appellant argues that the trial court's decision is not supported by competent, credible evidence because it lacks sufficient findings of fact. Appellant's argument is based upon the court's failure to include specific findings of fact on the relevant factors set forth in Bobo.
Civ.R. 52 states:
 [w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.
Therefore, the proper procedure to enable a party to receive a detailed account of the trial court's findings is to make a request pursuant to Civ.R. 52. See Pettet v. Pettet (1988),55 Ohio App.3d 128, 129-30.
Neither appellant nor Piper made a specific request for separate findings of fact and conclusions of law. Our review is circumscribed in the absence of specific findings of fact pertaining to the change of the surname. Id. at 129-30. As such, we must presume regularity in the proceedings below and affirm as long as there is some evidence from which the lower court could have decided the ultimate issue. Id.
In its January 5, 1999 entry, the trial court stated: "it is in the best interest of the child that his name shall be changed to Anthony Robert Piper." We have reviewed the transcript of the proceedings, wherein appellant, Piper and other witnesses testified about their relationships with Anthony and various aspects of his family life. The record reveals that Anthony has used the mother's married surname, Squicciarini, since birth for a total of nearly two years and eight months and Anthony is too young to give a meaningful preference.
Shortly after Piper was established as Anthony's biological father, Piper paid child support and entered into a shared parenting plan with appellant. Since October 1997, Anthony has resided several days each week with Piper, and Anthony has become identified as part of Piper's family unit besides being identified with appellant's family unit. Given that Piper has been designated residential parent, changing Anthony's surname would strengthen the father-child relationship by clearly identifying Piper as the father in the eyes of the child and the community.
The effect of a name change at this time will have minimal effect on the community in which Anthony is known as "Squicciarini," such as his peers at preschool and camps. Because the name change will allow Anthony to have the same surname as his residential parent, there should be little embarrassment, discomfort, or inconvenience as a result of the name change. See Wilhite
at paragraph two of the syllabus.
In light of the foregoing, our review of the record leads us to conclude that the trial court did not abuse its discretion in determining the best interest of Anthony was served by ordering that his surname be changed from his mother's married surname to his father's surname. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] The record reveals that Piper was also married, but involved in divorce proceedings. The record is unclear when Piper's divorce proceedings were initiated or finalized.
[2] The parentage report revealed that the likelihood of Piper's paternity was 99.91 percent.
[3] R.C. 3109.04(F)(2) provides that "in determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, * * * and all of the following factors:
 The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other
 domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."