DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Shawnnet D. Felter appeals from an order of the Wayne County Court of Common Pleas, Juvenile Division, that changed the name of her son Travis. This Court affirms.
Travis is the son of Felter and Ray J. Ady, who were not married at the time of Travis' conception. The relationship ended prior to Travis' birth on December 15, 1997. Felter named her son Travis Nevin Felter. The child has lived with his mother since his birth, while Ady had had no regular visitation with Travis until after Ady had acknowledged paternity following voluntary genetic testing and then filed a "motion to set definite visitation and change surname" on June 16, 1998.
Thereafter, on July 16, 1998, the trial court entered an order regarding visitation and scheduled the change of name issue for a later hearing. The hearing was held on September 9, 1998, and the court granted the motion for change of name in an order journalized the following day. The September 10, 1998 order provided the following rationale behind the name change:
 In this case the child is young. He has no knowledge of his surname, and no expressed preference. He has no siblings with whom he shares either surname. A change of surname will not affect him immediately due to his tender years; one must attempt to project what will be best for the child in the long run.
 Mr. Ady initiated his current relationship with his son, and the Court believes him sincere in developing and maintaining a meaningful relationship with the child. This is in the child's best interests. The relationship between a non-custodial parent and his child could be fostered by the commonality of a surname. The Court also acknowledges the possible embarrassment to the child when his surname is atypical of custom followed in this country as to family names. A change of surname should not be granted solely to accommodate custom, however, and such is not being done here.
Felter subsequently appealed, asserting two assignments of error.[1]
 Assignment of Error No. I
 THE COURT ERRED IN GRANTING APPELLEE'S REQUEST TO CHANGE THE MINOR CHILD'S NAME WHERE THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY APPELLEE TO SUPPORT THAT THE NAME CHANGE WOULD BE IN THE MINOR CHILD'S BEST INTEREST.
 Assignment of Error No. II
 THE TRIAL COURT ABUSED ITS DISCRETION UPON DETERMINING THAT, CONTRARY TO BOBO V. JEWELL, MOVANT-APPELLEE DID NOT HAVE THE BURDEN OF PROOF IN ESTABLISHING THAT THE CHANGE OF NAME WOULD BE IN THE CHILD'S BEST INTEREST[.]
On appeal, Felter first argues that, because Ady had failed to present evidence establishing that Travis' best interest would be served by adopting the paternal surname, the trial court erred in granting the name change. Felter then argues that the trial court failed to allocate the burden of proof upon the movant. This Court disagrees with both contentions.
Addressing at the outset the threshold question presented in Felter's second assignment of error, this Court finds that the trial court properly assigned the burden of proof. The transcript of the September 9, 1998 hearing clearly indicates that the trial court ultimately placed the burden of proof on Ady:
 I'm trying to find [whether there is] something discernible because I think otherwise then [the court] is to give a presumption to the mother since she gets to name the child; and unless the father can show something, the mother always wins because she has control over the birth certificate * * *.
Although the trial court acknowledged that such a burden is potentially inherently discriminatory against the father, the court's journalized entry provides that the mother clearly has the statutory right to designate the surname at birth and that this would only be changed upon a showing that the best interest of the child mandated such action. Therefore, the trial court was aware of the law even as it recognized that an arguable bias existed and properly assigned the burden of proof.
The sole remaining question before this Court, then, is whether this burden was properly satisfied, which constitutes the first assignment of error. In reviewing the sufficiency of the evidence introduced in support of the name change, this Court similarly finds no error below. The Supreme Court of Ohio has held that, in determining whether a child's name should be changed, a trial court must be guided by the best interest of the child.[2] In re Willhite (1999), 85 Ohio St.3d 28, 32; Bobov. Jewell (1988), 38 Ohio St.3d 330, paragraph one of the syllabus. In order to determine what constitutes the best interest of a child, the trial court should consider a variety of factors:
 [T]he effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest.
Willhite, supra, at 32, citing Bobo, supra, at paragraph one of the syllabus; In re Change of Name of Andrews (1990),235 Neb. 170, 177.
In the instant case, the trial court found that the name change would be in the best interest of the child. Because this Court will not substitute its judgment for that of the trial court, the lower court's decision will only be overturned if there has been an abuse of discretion. See In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138. An abuse of discretion is an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Id. at 137.
It is unquestionable that the circumstances of this case did not readily aid the presentation of evidence directed toward satisfying all of the Willhite factors. The tender age of the child involved and, as a result, the child's inability to express a preference as to his name both rendered the presentation of evidence regarding several of the factors difficult, if not outright impossible. For example, as the trial court observed, it is reasonable to assume that Travis did not even possess actual knowledge of his surname at the time of the proceedings below. Such difficulty in the presentation of evidence, however, does not render the trial court without the ability to consider other pertinent factors and reach a decision favoring the addition of the father's surname. This is so because "[t]he court is not required to have before it affirmative evidence proving each of the elements in the `best interests' test." Hodge v. Gentit (Aug. 8, 1991), Montgomery App. No. 12505, unreported. Rather, as the Second District has explained:
 The test sets out matters that must be considered by the court on the basis of the record before it. Each party has an opportunity to persuade the court that the record properly supports his position and not his opponent's. In cases of this kind the record is usually thin, and absent a showing that the court abused its discretion we will not reverse.
Id.
Guided by such considerations, this Court is not inclined to find that the record before us evinces any such abuse of discretion. Accepting as true the trial court's qualification that it did not grant the change of name solely to accommodate custom, this Court is left with only the trial court's conclusion that the relationship between Ady and Travis "could be fostered by the commonality of a surname" as supporting the name change. This is a valid concern. See In re Epp (Nov. 9, 1999), Franklin App. No. 99AP-125, unreported (holding that changing a child's surname to that of his biological father's would serve to strengthen their relationship). Although the trial court specifically found that "[n]either parent indicate[d] a change of surname would result in embarrassment to them" and that "[b]oth testified they would continue to love the child regardless of his surname," such findings do not undermine the trial court's determination that a shared surname would be in the best interest of the child. Rather, as the Supreme Court of Ohio has since recognized, "[a] dual name would help the child identify with both parents, a state of mind that child psychologists say is essential to the child's adjustment to divorce. Further, a combined surname gives the child a greater sense of security." Willhite, supra, at 33, citing Seng, Note, Like Father, Like Child: The Rights of Parents in their Children's Surnames (1984), 70 Va.L.Rev. 1303, 1350. While Travis is not a child of divorce but the product of unwed cohabitation, such reasoning remains applicable in light of the perspective that "[a] combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that both parents have responsibility for that child." Id. at 33, citing Seng, supra, at 1348.
While there was not evidence related to each and every factor to be considered favoring a name change, it is the weight and not the sheer amount of evidence that is persuasive in such cases — and here, the trial court found the weight of the father-son relationship dispositive. Accordingly, given that the trial judge was in the best position to evaluate the parties' credibility and intentions, and given the strong support by the Supreme Court of Ohio for consideration of both parents' relationships with their child evident in Willhite, this Court cannot say that the trial court acted arbitrarily, unconscionably, or unreasonably in ruling that the change of surname would be in Travis' best interest. This Court additionally notes, as the trial court did, that Felter may later pursue a change of name for Travis should the boy's father fail to continue fostering the involved relationship and bond that he represented to the trial court he desired and that the record shows he had been clearly pursuing. Further, should Travis later wish to change his name so as to adopt his maternal surname over his paternal surname, he is free to pursue such action.
Neither of Felter's assignments of error are well taken. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR, FOR THE COURT
[1] Felter does not appeal the trial court's resolution of the motion for visitation and this Court need not express any opinion here regarding the matter.
[2] Although Willhite was concerned with a change of name application brought under R.C. 2717.01(A), the same considerations apply in a name change brought in a parentage action pursuant to R.C. 3111.13(C). See Shuff v. Delturco (Dec. 30, 1991), Seneca App. No. 13-91-7, unreported.
WHITMORE, J. CONCURS