DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment entered by the Ross County Common Pleas Court, Juvenile Division, denying the request of Maria Kern, defendant below and appellant herein, to change the surname of her son, Christopher W. Sabin, born April 20, 1997.
Appellant raises the following assignment of error for review:
 "THE TRIAL COURT ERRED BY NOT GRANTING THE RESIDENTIAL PARENT[']S MOTION TO CHANGE THE CHILD'S SURNAME."
Our review of the record reveals the following pertinent facts. Appellant and James Sabin, plaintiff below and appellee herein, are Christopher's biological parents. When Christopher was born, appellant and appellee were engaged to be married and were cohabitating. Contemplating that they would be married, appellant and appellee agreed to list Christopher's surname as "Sabin" on the birth certificate. Shortly after Christopher's birth, the parties relationship deteriorated and appellant moved out of the parties' shared residence.
On September 4, 1998, appellee filed a complaint for custody and visitation. Appellant filed a counterclaim for child support and a motion to change Christopher's surname.
On July 14, 1999, the parties entered into an agreement pertaining to all matters of child custody and support. Appellant was named Christopher's residential parent and appellee was awarded companionship and visitation rights. The parties could not, however, reach an agreement regarding Christopher's surname. On July 15, 1999, the magistrate denied appellant's motion to change Christopher's surname. The magistrate concluded that Christopher's best interests would not be served by changing his surname.
On July 23, 1999, appellant filed objections to the magistrate's order. Appellant noted that she is Christopher's residential parent and that Christopher's surname differs from her own. Appellant argued that because Christopher primarily will be identified as a member of her household, Christopher's best interests would be served by having her surname. The trial court subsequently overruled appellant's objections to the magistrate's decision. The court thereupon adopted the magistrate's decision to deny appellant's motion to change Christopher's surname. Appellant filed a timely notice of appeal.
In her sole assignment of error, appellant asserts that the trial court erred by denying her motion to change Christopher's surname. Appellant argues that because she is the residential parent, Christopher's best interests would be served by sharing her surname.
Initially, we note that a trial court's decision with respect to a name change request may be overturned only if that judgment constitutes an abuse of the court's sound discretion.In re Ramey (Dec. 22, 1999), Washington App. No. 98CA4 and 98CA28, unreported, citing Jarrells v. Epperson (1996), 115 Ohio App.3d 69,684 N.E.2d 718. Thus, when reviewing a trial court's name change decision, a reviewing court may not simply substitute its judgment for that of the trial court. Ramey; In re Jane Doe1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181. An abuse of discretion connotes an attitude by the trial court that is unreasonable, unconscionable, or arbitrary. Id.
In In re Willhite (1999), 85 Ohio St.t3d 28 [85 Ohio St.3d 28],706 N.E.2d 778, the Ohio Supreme Court recently addressed the name change issue. The court noted that fulfilling a child support obligation, exercising visitation rights, or invoking the custom of using paternal surnames does not constitute an adequate basis for resolving a name change controversy. TheWillhite court wrote at 85 Ohio St.3d 31, 706 N.E.2d 781:
 "Under the Newcomb test, as well as tradition, a child's surname has been a sort of quid pro quo for the father's financial support. We find that this ignores the mother's parallel duty to support the child whether or not she is the residential parent. Further, it `reinforces[s] the child-as-chattel mentality by making the child's name a piece of property to be bargained over.' Seng. Note, Like Father, Like Child: The Rights of Parents in their Children's Surnames (1984), 70 Va. L.Rev. 1303, 1333-1334; Omi, The Name of the Maiden (1997), 12 Wis. Women's L.J. 253, 293. Indeed, it rewards the father for doing that which he is already legally, if not morally, required to do. Clearly, the notion of equating the best interest of the child with dollars is no longer reasonable in contemporary society.
 The courts' reliance on the Newcomb standard is too narrowly focused on the father in determining the best interest of the child. In Bobo v. Jewell (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, we warned courts against just such a mistake when we cautioned them "to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname.' Id. at 334, 528 N.E.2d at 184-185. Further, we stated that `[i]n these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years.' Id. at 334, 528 N.E.2d at 185.
 While Bobo involved the application of the best-interest-of-the-child test in the context of a paternity action, we find that the same rationale applies here. Further, we conclude that arguing that the child of divorced parents should bear the paternal surname based on custom is similarly objectionable."
Thus, courts should focus on a child's best interest when determining whether a reasonable and proper basis has been established to grant a name change request. A parent's financial support and the exercise of visitation do not constitute the sole factors that a court should consider. Id. The Willhite court, at 85 Ohio St.3d 32, 706 N.E.2d 782, also listed factors that courts should consider when deciding a name change request:
 "Further, borrowing from the guidelines in Bobo and In re Change of Name of Andrews (1990), 235 Neb. 170, 454 N.W.2d 488, we hold that in determining whether a change of a minor's surname is in the best interest of the child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and contact with support of the child; and any other factor relevant to the child's best interest. Bobo v. Jewell
(1988), 38 Ohio St.3d 330, 528 N.E.2d 180, paragraph two of the syllabus; In re Change of Name of Andrews, 235 Neb. at 177, 454 N.W.2d at 492."
See, also, In re Ramey (Dec. 22, 1999), Washington App. No. 98CA4 and 98CA28, unreported.[1]
In the case sub judice, the trial court determined that Christopher's best interest would not be served by changing his surname. We note that while the evidence adduced below did not address each factor in the best interest analysis, it is the quality of the evidence rather than the quantity of the evidence that should guide a court's decision. The evidence reveals that appellee is actively involved in Christopher's life. The trial court, apparently, gave little weight to appellant's argument that Christopher's current surname would cause him, at this juncture, embarrassment, discomfort or inconvenience. The trial court rejected appellant's arguments that her status as the residential parent warranted the change in Christopher's surname at this.[2]
In light of the foregoing, our review of the sparse record in the case at bar leads us to conclude that the trial court did not abuse its discretion by determining that Christopher's best interest is served by retaining appellee's surname. Although members of this court may have, after considering the factors outlined in Willhite, viewed the evidence differently than the trial court and may have reached a different conclusion, the trial court's decision is not arbitrary, capricious or unconscionable and does not constitute an abuse of discretion. Again, we will not, in view of the evidence adduced below, substitute our judgment for that of the trial court.
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
[1] Although Willhite arose from a name change application brought under R.C. 2717.01 (A), the same factors apply in a name change application brought under R.C. 3111.13 (C). See State exrel. WCCSEA and Ady v. Felter (Dec. 22, 1999), Wayne App. No. 98CA59, unreported; Shuff v. Delturco (Dec. 30, 1991), Seneca App. No. 13-91-7, unreported.
[2] Additionally, we note that if appellee fails to continue to foster a relationship with Christopher or should other factors in the future begin to militate in favor of a name change, appellee may later pursue a name change for Christopher. See Felter,supra. Moreover, should Christopher later wish to change his surname, he may pursue such action.