[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] Scott Brian Cottrill did not enter an appearance in this appeal.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Monica Sue Dotson, the defendant below and the appellant herein, appeals an Athens County Common Pleas Court, Probate Division, judgment that ordered a surname change of her son, Cayden Lee Dotson, to the surname of his father, Scott Brian Cottrill.
 {¶ 2} Appellant raises two assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
"The trial court abused its discretion in changing the child's Surname from Dotson to Cottrill."
SECOND ASSIGNMENT OF ERROR:
"The trial court denied appellant procedural due process under article I, Section 16 of the Ohio constitution and under thefourteenth amendment to the United States Constitution."
 {¶ 3} The parties married on September 11, 2001. At the time of their marriage and unknown to either party, the appellant was pregnant with Cayden. The couple separated shortly after the marriage and commenced divorce proceedings. Cottrill was the name of both parents at the time of Cayden's birth, but the appellant named the child Cayden Lee Dotson, using her maiden surname. Appellee did not participate in the birth or naming of the child. Appellant did, however, list the appellee as Cayden's father on the child's birth certificate, and his paternity was subsequently confirmed through DNA testing.
 {¶ 4} When the parties divorced, the trial court: (1) restored appellant's maiden name; (2) granted the appellant custody of Cayden; and (3) awarded the appellee visitation rights and ordered him to pay child support. Both parties testified that they have family in the area and use the last names of Cottrill and Dotson, respectively.
 I. {¶ 5} In her first assignment of error, the appellant asserts that the trial court abused its discretion in the finding that changing Cayden's surname from Dotson to Cottrill is in the child's best interest. Appellant argues that because she is Cayden's residential parent and provides the primary care, his best interest is served by sharing her surname. In her second assignment of error, the appellant asserts that the trial court denied her procedural due process by conducting a summary hearing based solely upon statements of counsel and the answers to minimal questions asked under oath by the court itself, without opportunity for either direct or cross examination. As we discuss, infra, we reverse the trial court's judgment, but for reasons beyond the merits of the assignments of error.
 {¶ 6} Generally, a trial court's decision with respect to a name change request may be reversed only if that judgment constitutes an abuse of the court's sound discretion. In re Ramey (Dec. 22, 1999), Washington App. No. 98CA4 and 98CA28, unreported, citing Jarrells v. Epperson
(1996), 115 Ohio App.3d 69, 684 N.E.2d 718. Thus, when reviewing a name change decision, a reviewing court may not simply substitute its judgment for that of the trial court. Ramey; In re Jane Doe 1 (1991),57 Ohio St.3d 135, 566 N.E.2d 1181. An abuse of discretion connotes an attitude by the trial court that is unreasonable, unconscionable, or arbitrary. Id.
 {¶ 7} In In re Willhite (1999), 85 Ohio St.3d 28, 706 N.E.2d 778, the Ohio Supreme Court addressed the name change issue. The court noted that fulfilling a child support obligation, exercising visitation rights, or invoking the custom of using paternal surnames does not constitute an adequate or sufficient basis for resolving a name change controversy. TheWillhite court wrote at 85 Ohio St.3d 31, 706 N.E.2d 781:
"Under the Newcomb test, as well as tradition, a child's surname has been a sort of quid pro quo for the father's financial support. We find that this ignores the mother's parallel duty to support the child whether or not she is the residential parent. Further, it `reinforces[s] the child-as-chattel mentality by making the child's name a piece of property to be bargained over.' Seng. Note, Like Father, Like Child: The Rights ofParents in their Children's Surnames (1984), 70 Va. L. Rev. 1303, 1333-1334; Omi, The Name of the Maiden (1997), 12 Wis. Women's L.J. 253, 293. Indeed, it rewards the father for doing that which is already legally, if not morally, required to do. Clearly, the notion of equating the best interest of the child with dollars is no longer reasonable in contemporary society. The courts' reliance on the Newcomb standard is too narrowly focused on the father in determining the best interest of the child. In Bobo v. Jewell (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, we warned courts against just such a mistake when we cautioned them `to refrain from defining the best-interest-ofthe-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname. Id. at 334, 528 N.E.2d at 184-185. Further, we stated that `[i]n these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years.' Id.
at 334, 528 N.E.2d at 185. While Bobo involved the application of the best-interest-of-the-child test in the context of a paternity action, we find that the same rationale applies here. Further, we conclude that arguing that the child of divorced parents should bear the paternal surname based on custom is similarly objectionable."
 {¶ 8} Thus, courts should focus on a child's best interest when determining whether a reasonable and proper basis has been established to grant a name change request. Courts should, however, be mindful that a parent's financial support and the exercise of visitation do not constitute the sole factors that a court should consider. Id. TheWillhite court, at 85 Ohio St.3d 32, 706 N.E.2d 782, listed factors that courts should consider when deciding a name change request:
"Further, borrowing from the guidelines in Bobo and In re Change ofName of Andrews (1990), 235 Neb. 170, 454 N.W.2d 488, we hold that in determining whether a change of a minor's surname is in the best interest of the child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and contact with support of the child; and any other factor relevant to the child's best interest. Bobo v. Jewell (1988),38 Ohio St.3d 330, 528 N.E.2d 180, paragraph two of the syllabus; In reChange of Name of Andrews (1990), 235 Neb. at 177, 454 N.W.2d at 492."
 {¶ 9} See, also, In re Ramey (Dec. 22, 1999), Washington App. No. 98CA4 and 98CA28, unreported.
 {¶ 10} At this juncture, we note that our review has been hampered in this matter due to the fact that the appellee has not entered an appearance in this appeal or filed an appellate brief. In State v. Miller
(1996), 110 Ohio App.3d 159, 161, 673 N.E.2d 934, 936, we addressed the consequences of the failure to file an appellate brief and the application of App. R. 18(C) as follows:[3]
"Prior to considering the merits of this appeal, we note that appellee has failed to file a brief or otherwise make an appearance in this appeal.
App. R. 18(C) provides that if an appellee fails to timely file its brief, the court, in ruling on the appeal, may accept the appellant's statement of the facts and issues as correct and reverse the trial court's judgment as long as appellant's brief reasonably appears to sustain such action. Under certain circumstances, an appellate court may need to consider all or part of a trial court's record in such a matter.Bell v. Horton (1995), 107 Ohio App.3d 824, 669 N.E.2d 546; State v.Middleton (1993), 85 Ohio App.3d 403, 409, 619 N.E.2d 1113, 1117;Fuller v. Fuller (1972), 32 Ohio App.2d 303, 304-305, 61 O.O.2d 400,400-401, 290 N.E.2d 852, 853.
However, it is also within an appellate court's discretion to reverse a judgment based solely on a consideration of appellant's brief. State v.Grimes (1984), 17 Ohio App.3d 71, 71-72, 17 OBR 126, 126-127,477 N.E.2d 1219, 1220-1221; Ford Motor Credit Co. v. Potts (1986),28 Ohio App.3d 93, 95-96, 28 OBR 136, 138, 502 N.E.2d 255, 257-258;Helmeci v. Ohio Bur. of Motor Vehicles (1991), 75 Ohio App.3d 172, 174,598 N.E.2d 1294, 1295-1296. Here, we accept appellant's statement of the facts and issues as correct."
 {¶ 11} In the case sub judice, the appellant asserts that the trial court conducted a summary proceeding when a full evidentiary hearing should have been conducted. Appellant contends that the parties should have been permitted to fully present evidence and conduct a thorough cross-examination. Again, we note that the appellee did not present a contrary argument. Thus, solely on the basis of App. R. 18(C), we hereby reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion, including an evidentiary hearing. We also recognize that events that may have occurred since the parties' original hearing could possibly shed additional light on this issue and have an impact on the trial court's decision.
Judgment Reversed.
[3] App. R. 18(C) provides:
"If an appellant fails to file the appellant's brief within the time provided by this rule, or within the time as extended, the court may dismiss the appeal.
If an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such actions."