[Cite as *In re Name Change of D.G.S.*, 2017-Ohio-4110.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: NAME CHANGE OF D.G.S.

C.A. No.　　16CA0041-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.　　2015 12 NC 00087

DECISION AND JOURNAL ENTRY

Dated: June 5, 2017

SCHAFER, Presiding Judge.

{¶1}　Petitioner-Appellant, M.L. ("Mother"), appeals the judgment of the Medina County Court of Common Pleas, Probate Division, denying her application to change the name of her minor son. For the reasons that follow, we affirm.

I.

{¶2}　Mother and Respondent-Appellee, B.S. ("Father"), were divorced on December 4, 2015. Mother used the surname L. early in the marriage, but ultimately used the surname S. She reverted to her maiden name following the divorce. While married, the parties adopted their minor child, D.G.S., through a domestic adoption. Mother is of Italian descent and Father is of German/Irish descent. D.G.S.'s biological mother is of Lebanese descent and his biological father's descent is unknown.

{¶3}　At the time of adoption, Mother and Father changed D.G.S.'s name from his birth name to D.L.S., the D. an Italian first name and the L. having been his first name given at birth.

Although D.G.S.'s middle name was to have remained L. in deference to his biological mother, Mother and Father had it legally changed during their marriage to the masculine form of Mother's middle name. Accordingly, D.G.S.'s first and middle name are reflective of Mother's Italian heritage and his surname reflective of Father's heritage.

{¶4} While divorce proceedings were still pending, Mother was denied a prior application to change D.G.S.'s surname in August 2015. Nonetheless, Mother either encouraged or allowed D.G.S. to be identified by the surname L.-S. over Father's objection. Later, when the divorce became final, Mother filed a subsequent application to change the surname of D.G.S. to L.-S. Father objected to the proposed name change and the probate court appointed a guardian ad litem ("GAL"). Following a hearing and an in camera interview with D.G.S., the probate court denied Mother's application.

{¶5} Mother filed this timely appeal, raising two assignments of error for our review. As both assignments of error raise similar issues, we elect to consider them together.

II.

### Assignment of Error I

**The trial court's ruling is contrary to the weight of the evidence when applied to controlling legal [precedent].**

### Assignment of Error II

**The trial court improperly applied a paternalistic standard in denying the surname change of minor child.**

{¶6} In her first assignment of error, Mother contends that the probate court's ruling is contrary to the weight of the evidence. In her second assignment of error, Mother argues that because the weight of the evidence weighs in favor of the name change, the trial court abused its

discretion by "supplanting [its] own preference for paternalistic standards in place of the law." We disagree with both arguments.

**{¶7}** R.C. 2717.01 governs the proceedings for a change of name. R.C. 2717.01(A)(3) provides that, following a proper application, a probate court may order a name change for "reasonable and proper cause." "[W]hen deciding whether to permit a name change for a minor child * * *, the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established." *In re Willhite*, 85 Ohio St.3d 28, paragraph one of the syllabus. The Supreme Court of Ohio has stated that the trial court should consider the following factors when determining whether a change of a minor's surname is in the best interest of the child:

> the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest.

*Id.* at paragraph two of the syllabus, citing *Bobo v. Jewell*, 38 Ohio St.3d 330 (1988), paragraph two of the syllabus, and *In re Change of Name of Andrews*, 235 Neb. 170 (1990). "If the probate court has considered the appropriate factors, we will not substitute our judgment for its judgment absent an abuse of discretion." *In re A.C.*, 9th Dist. Summit No. 27646, 2015-Ohio-4351, ¶ 11. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} In this case, the probate court determined that based upon the totality of the testimony and the evidence presented, that Mother had failed to establish that the name change was in D.G.S.'s best interests. In making this determination, the probate court considered the factors outlined by the Supreme Court of Ohio in *Willhite*. Specifically, the probate court found that a surname change would adversely affect the child's development and maintenance of a relationship with his father, however, absent a name change, D.G.S. is and would continue to be "firmly identified" as a member of Mother's family. In making this determination, the court gave significant weight to the fact that during its in camera interview, D.G.S. made the statement, "my dad lives in an apartment, not with me anymore, * * * he used to live with me but he left my mom and I" and that there was an "an obvious 'us (mom and I) vs. him (dad)' negative undertow" occurring in the family. Additionally, Mother used the name L. or L.-S. for D.G.S. despite the denial of her previous application for name change and without the consent of Father. The record further indicates that D.G.S. does not identify with Father's German/Irish ethnic heritage, but rather his mother's Italian heritage and that D.G.S. has identified his surname as just L. to his teacher. Additionally, D.G.S. is being brought-up in his mother's religion and Mother objects to Father taking D.G.S. to his church.

{¶9} The court also noted that "[t]he evidence demonstrates that [D.G.S.] is currently firmly identified as a member of the [L.] family." Specifically, the court noted that his relationship with his extended relatives would not be affected absent a name change. Indeed, Mother testified that D.G.S. interacts with her family on a regular basis, but that Father's extended family is not in the area. The record also demonstrates that despite his biological Lebanese heritage, D.G.S. identifies as Italian, has an Italian first and middle name, and wears Italian clothes and shoes.

{¶10} D.G.S.'s surname has been the same since his adoption. Upon conducting an in camera interview, the probate court found that D.G.S. lacked sufficient maturity to express a meaningful preference in his surname. The probate court specifically noted that although D.G.S. is "very bright," he could be easily influenced because of his age and lack of understanding of the adult world. The court gave significant weight to the fact that during the in camera interview, D.G.S. "appeared somewhat prepped with an agenda and practiced answers in support of [Mother]'s position as demonstrated by his physical mannerisms and presentation." Additionally, the court noted that D.G.S. "engaged in physical unease, avoidance and change the subject manifestation of actions" when the discussion occurred in a fashion other than "mom versus dad."

{¶11} The probate court also found that Mother had not established with clear and convincing evidence any demonstrable level of embarrassment, discomfort, or inconvenience in maintaining D.G.S.'s current surname. Although the trial court did not put emphasis on any particular evidence, the court recognized in its journal entry that Mother testified that absent the name change, in her professional opinion travelling with D.G.S. would be embarrassing and difficult because she will be required to travel with other documents and may be delayed in customs and immigration. Father, however, testified that based upon his professional experience that travel documents and identification would be harder if the name change were granted. Mother also testified that she felt embarrassed at a pre-kindergarten registration because "despite her school/church related involvement * * * a registration packet was not available in the name of [L.] but in the name of [S.]." The court noted, however, that "the lack of a packet did not adversely affect kindergarten registration, nor was there testimony that the child felt any embarrassment for the faux pas." The court stated "[D.G.S. appears well adjusted at school and

that the school appears to readily comprehend that [D.G.S.]'s parents are divorced and includes both in communications, etc."

{¶12} The probate court stated that Mother had advised the court that Father maintained contact with D.G.S. and was current in his support. The court found that both parents are residential parents and legal custodians pursuant to their shared parenting plan under the divorce decree. Additionally, the court found that "[t]he disparity in parenting time seems more traceable to the work related schedule of [Father] and the fact that [Mother] has greater time available to spend with D.G.S. given her work related disability."

{¶13} The probate court also considered the testimony of the GAL appointed in this case. The GAL opined that the name change should be denied because: (1) D.G.S.'s first and middle name were already Italian; (2) although D.G.S. identified with the name [L.], this may have been due to Mother using the surname for D.G.S. despite the denial of her prior application; (3) the name change could diminish D.G.S.'s identification with Father; and (4) no information was provided to the GAL with regard to embarrassment, discomfort, or inconvenience due to D.G.S. having a different surname from Mother and that any concerns of embarrassment are merely hypothetical.

{¶14} Finally, we determine that Mother's claim that the probate court used "an archaic paternalistic" standard is without merit. In *Bobo* and then again in *Willhite*, the Supreme Court of Ohio advised courts "'to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal surname.'" *Willhite*, 85 Ohio St.3d at 32, quoting *Bobo* at 334. However, in support of her argument, Mother does not point to any findings of the probate court. Instead, Mother only points to Father's testimony that he did not want D.G.S.'s surname changed and the testimony of

the GAL that Father believed a child should have his father's surname and that Father carried anger from the divorce into the present matter. Indeed, the court only considered the best interests of the child and did not consider the interests of the either parent.

{¶15} Accordingly, we conclude that the probate court considered the appropriate factors and, thus, did not abuse its discretion when it denied Mother's application to change D.G.S.'s surname.

{¶16} Therefore, Mother's first and second assignments of error are overruled.

### III.

{¶17} Mother's assignments of error are overruled. Therefore, the judgment of the Medina County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

PAMELA J. MACADAMS, Attorney at Law, for Appellant.

STEVE BAILEY, Attorney at Law, for Appellee.

DEREK CEK, Guardian ad Litem.