## Richmond

### LARRY ANDERSON FLOWERS v. JOYCE R. CAIN

September 1, 1977.

Record No. 760881.

Present: All the Justices.

*E. Eugene Gunter* for appellant.

(*James L. Berry*, on brief), for appellee.

Case submitted on brief for appellee.

CARRICO, J., delivered the opinion of the Court.

In an application filed pursuant to Va. Code § 8-577.1, Joyce R. Cain sought to have the names of her two minor children, born of a previous marriage, changed to the surname of her present husband, Thomas Franklin Cain. The natural father, Larry Anderson Flowers, objected to the proposed change, but the trial court, after a hearing, granted the mother's application. We awarded Flowers an appeal.

The children, Larry Anderson Flowers, Jr., and Christopher Allan Flowers, were born, respectively, March 15, 1968, and July 13, 1969. On April 30, 1971, the mother was awarded a final divorce from Flowers. In the divorce proceeding, the mother was granted custody of the children. The father was afforded visitation privileges, and he was ordered to pay $42.00 per week in child support.

On December 24, 1975, the mother married Thomas Franklin Cain. On February 4, 1976, she filed the present application. Cain, the stepfather, joined in the application, evidencing his consent to "the changes of name."

Under Va. Code § 8-577.1, a person desiring to change his own name or the name of his child may apply to an appropriate circuit court which, in its discretion, may order the change. As the statute read at the time of the proceeding below, it established no guidelines for the exercise of the court's discretion. We believe, however, and the parties to this appeal agree, that the present dispute should be resolved by

determining what is in the best interest of the children. Indeed, we observe that Va. Code § 8-577.1 now contains this test.*

This court's only prior experience with the statute in question concerned a married woman who, for professional reasons and with the consent of her husband, desired to resume her maiden name. *In Re: Strikwerda and Antell*, 216 Va. 470, 220 S.E.2d 245 (1975). Noting that under the common law a person is free to adopt any name he chooses "if it is not done for a fraudulent purpose or in infringement upon the rights of others," we said we found "nothing to the contrary" in Va. Code § 8-577.1. Accordingly, we held that the trial court had abused its discretion in denying the requested change of name.

■ Because of its different factual and legal basis, *Strikwerda* is not controlling here. But *Strikwerda* emphasized a crucial point: the husband and wife there involved, then childless, had agreed that any children born of their marriage would bear the husband's surname. This emphasis reflected the recognition by other courts of a father's interest in having his child continue to use his name and of the proposition that this parental interest is relevant to a determination of the child's best interest. *E.g., In re Lone*, 134 N.J. Super. 213, 220, 338 A.2d 883, 887 (1975).

■ Where divorce occurs and the mother is awarded custody, usually it is in a child's best interest to maintain and encourage, rather than weaken, the relationship between father and child. Accordingly, courts elsewhere, in the aftermath of divorce, have been reluctant to change a child's name over the objection of a devoted father for fear that the change would damage further the already strained father-child relationship. *E.g., West* v. *Wright*, 263 Md. 297, 302-03, 283 A.2d 401, 404 (1971).

Thus, while applying the best interest test, other courts, with near unanimity, have declined to change the name of a child over the natural father's objection unless substantial reasons exist for the change. *E.g., In re Application of Robinson*, 302 Minn. 34, 36, 223 N.W.2d 138, 140 (1974). Generally, a change will be ordered only if (1) the father has abandoned the natural ties ordinarily existing between parent and child, (2) the father has engaged in misconduct sufficient to embarrass the child in the continued use of the father's name, (3) the child otherwise will

---

*Under a 1976 amendment to § 8-577.1, if one of the parents objects to the change of a child's name, a hearing must be held to determine whether the change "is in the best interest of the minor."

suffer substantial detriment by continuing to bear the father's name, or (4) the child is of sufficient age and discretion to make an intelligent choice and he desires that his name be changed. But "a change of name will not be authorized against the father's objection ... merely to save the mother and child minor inconvenience or embarrassment." Annot., 53 A.L.R.2d 914, 915 (1957).

We share with other courts the same reluctance to change the name of a child over the objection of the natural father. And we agree with the view that, in the face of such an objection and the absence of substantial reasons, the change should not be ordered.

Returning to the case at hand, we find that, in her application, the mother alleged that she, her present husband, and the children were residents of Winchester, Virginia. She alleged further that the family was "shortly moving to a new community" and she desired to change the children's names "in order to avoid confusion, to permit registration in school under the names by which [the children] wish to be known and to prevent embarrassment on the part of said children among their playmates and friends."

When the natural father objected to the proposed change of names, the trial court ordered a hearing of the matter. In this hearing, the burden was upon the mother to prove by satisfactory evidence that a change in the children's names would be in their best interest. It appears, however, that the trial judge may have believed mistakenly that the burden was upon the objecting father to prove that the children's names should not be changed. In deciding the case, the judge remarked that he did not consider "there was a sufficient reason proven by the father that the names should not be changed."

But, whether the burden rested upon the mother or upon the objecting father, we believe the trial court erred in ordering the change of names. The mother was the only witness to testify in support of her application. She stated that she, her present husband, and the children had moved recently from their former home in Winchester to Woodbridge, near Washington, D.C. She related no instance, however, of "confusion" or "embarrassment" experienced by the children in the new community.

The mother stated merely that, when she and Cain "were first married," the children "thought ... their last name was Cain."

And she related one instance, before the family moved from Winchester, where Christopher returned home from school with "Chris Cain on his papers." The mother told him: "You know you can't do that." This instance, the mother testified, prompted the decision to seek the change in the children's names.

The mother testified further that she "realized . . . it meant something" to the children to have their names changed because they thought "so much" of their stepfather. The children, the mother stated, "look towards [the stepfather] as a father substitute."

Opposing the application, Flowers, the natural father, testified that he had paid regularly the weekly installments for the children's support. He had maintained an insurance policy which provided the children with eye and dental examinations, prescriptions, and hospitalization. He had carried a life insurance policy payable to his parents for the benefit of the children. He had opened small savings accounts and had purchased savings bonds for the children. And he declared his intention to continue to provide everything in the way of support for the children he had furnished in the past.

Flowers testified further that he had given the children birthday and Christmas presents, although he said that on occasion he had told the mother "to order" what the children wanted, and he would "add the money to the [support] check." Flowers stated also that he had bought the children candy or "anything they wanted" at the supermarket where he worked, which was located near the children's former home in Winchester.

The only real conflict in the evidence concerned Flowers' visitations with the children. Admitting he had exercised his scheduled visitation privileges sporadically, he stated that when he attempted to exercise the privileges there were "problems" with the mother. On the other hand, the mother testified that, while there was "a lot of hostility" when she and Flowers "first separated," there had been "no problem . . . in the past three or four years." Flowers testified further, however, that, before the children moved from Winchester, he saw and talked to them "every other day" at the store where he worked. And he stated he intended to visit the children at their new home in Woodbridge "whenever" he could.

Flowers professed his continued "love and devotion to [the] two children." And he pronounced his embarrassment and anger caused by the proposal to change the children's names.

From the evidence, it appears that the only confusion possibly experienced by the children occurred when the mother and Cain "were first married" and the children "thought . . . their last name was Cain." And the only embarrassment possibly encountered by either child occurred when one of them returned home from school and was chided for writing "Chris Cain on his papers." But this sort of confusion and embarrassment is no greater than would be experienced by any child who finds himself in a situation where his parents have divorced and his mother has remarried. What occurred in this case is the type of "minor inconvenience or embarrassment" which courts elsewhere have refused to recognize as sufficient to justify changing a child's name over the objection of the natural father. Annot., 53 A.L.R.2d 914, 915 (1957).

Further, from the mother's testimony that the children looked upon the stepfather "as a father substitute" and "thought . . . their last name was Cain," it may be assumed, as the trial court concluded, "that the children [had] indicated a desire that their names be changed." But one child was only six years old and the other only seven at the time of the hearing below. So neither child was capable of making an intelligent choice in the matter of his name.

The mother offered only slight evidence, therefore, showing nothing more than "minor inconvenience or embarrassment," to support her application for change of names. On the other hand, the evidence was overwhelming that the father had not abandoned the natural ties with his children, that he had not engaged in misconduct which would embarrass the children in the continued use of his name, and that otherwise it would not be detrimental to the children to continue to bear the father's name. In these circumstances, the finding is not warranted that a change of names would serve the children's best interest.

Thus, the order changing the children's names is unsupported by any evidence that the change was in their best interest. Accordingly, the order will be reversed, and the mother's application will be dismissed.

*Reversed and dismissed.*