# Nathan Beyah

## v.

# Edrow Rasheedah Beyah Shelton, Etc.

Record No. 830625

June 13, 1986

Present: All the Justices

*Bessida Cauthorne White* for appellant.
No brief or argument for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This appeal is from an order entered in a change-of-name proceeding brought by the mother of a minor child born out of wedlock. *See* Code § 8.01-217. The trial court, over the objection of the child's natural father, ordered the child's name changed. The court stated that the father had no "right to object" to the change of name because he and the child's mother were never married. Additionally, the court found that the change of name was in the child's best interest. The father appeals.

Nathan Beyah and Edrow Carolyn Tyler began living together in 1976. In October 1977, while she was expecting Beyah's child, Edrow changed her surname to Beyah "in an attempt to make her child have the name of the child's father." The child, a girl, was born on December 16, 1977. Her birth certificate states her name as Aseelah Frances Beyah and her father as Nathan Beyah. Although the father and mother never married, they continued to live together for three years after the child's birth, and the father provided the sole support for the mother and child.

In early 1980, the father and mother separated, and the mother retained custody of the child. The father visits his daughter regularly and continues to contribute toward her support.

The mother subsequently married Ray Stuart Shelton with whom she and the child live in Goochland County. The mother and Shelton desire to have the child's name changed to Aseelah Frances Shelton. They contend that changing the child's name would be in her best interest, principally because it would prevent "embarrassing questions as to the child's origin."

The father testified that he loves and cares for his daughter and wishes to continue his existing parental relationship with her. He has not engaged in any misconduct that would embarrass his daughter if she continued using his name.

In ordering the change of the child's name, the trial court stated: (1) the father "did not have the right to object to the change of the child's name because of his failure to marry the [mother]," and (2) "the best interest of the child would be served by granting the name change."

First, we consider the father's standing to object to the change of his daughter's name. Code § 8.01-217 in pertinent part provides:

> In case of a minor who has both parents living, the parent who does not join in the application [to change the child's name] shall be served with reasonable notice of the application and, should such parent object to the change of name, a hearing shall be held to determine whether the change of name is in the best interest of the minor.

The statute makes no distinction between wed and unwed parents, and the General Assembly has not expressed an intention to make one. We conclude, therefore, that an unwed, as well as a wed, parent has standing to object to a minor child's change of name. Indeed, the trial court's application of the statute in this case may deprive the unwed father of the equal protection of the laws guaranteed to him by the Fourteenth Amendment to the United States Constitution. *See Stanley* v. *Illinois*, 405 U.S. 645 (1972). Thus, we conclude that the trial court erred in ruling that the father had no right to object.

Next, we consider whether the evidence supports the trial court's finding that the change of name is in the child's best interest. In determining this issue, we are guided by the principles of law enunciated in *Flowers* v. *Cain*, 218 Va. 234, 237 S.E.2d 111 (1977).

In *Flowers*, we said that when a natural father objects to the proposed change of name of his minor child, the burden is on the mother to prove by satisfactory evidence that the change would be in the child's best interest. *Id.* at 237, 237 S.E.2d at 113. We also recognized in *Flowers* the importance of "a father's interest in having his child continue to use his name and . . . that this parental interest is relevant to a determination of the child's best inter-

est." *Id.* at 236, 237 S.E.2d at 113. Additionally, we stated that a court should decline to change the name of a child over the natural father's objection "unless substantial reasons exist for the change." *Id.* Moreover, the change of a child's name should not be granted over the father's objection "merely to save the mother and child minor inconvenience or embarrassment." *Id.* at 237, 237 S.E.2d at 113. Finally, we stated that when a natural father objects, a change of name generally will not be ordered unless

(1) the father has abandoned the natural ties ordinarily existing between parent and child, (2) the father has engaged in misconduct sufficient to embarrass the child in the continued use of the father's name, (3) the child otherwise will suffer substantial detriment by continuing to bear the father's name, or (4) the child is of sufficient age and discretion to make an intelligent choice and he desires that his name be changed.

*Id.* at 236-37, 237 S.E.2d at 113.

■ The facts in *Flowers* are strikingly similar to those in the present case. In *Flowers*, the mother sought to have the surnames of her two minor children changed from that of their natural father to that of their stepfather, and the natural father objected. Following the separation and divorce of the parents, the mother was granted custody of the children. The father received visitation privileges and supported the children. The father stated that he loved his children and that he was angered and embarrassed by the proposal to change his children's names.

In the present case, the father visits his daughter on a regular basis. He makes regular support payments. He has great love and devotion for his child and desires to continue his close parental relationship with her. Clearly, the father has not abandoned the natural ties with his child.

Furthermore, there is no evidence that the father has engaged in any misconduct that would embarrass or otherwise harm his daughter if she continued using his name. Finally, because the child was only four years old at the time of the hearing, she is not of sufficient age and discretion to make an intelligent choice in the matter.

The only substantial factual difference between *Flowers* and the present case is that here the parents never married. Nothing in the

present case, however, suggests that the natural father's unwed status should be given controlling weight in determining the child's best interest.

As we stated previously, a child's use of her father's surname is relevant to a determination of the child's best interest; this may be especially important where, as here, the child is born out of wedlock. Indeed, the mother recognized this when she changed her own surname to that of the father's shortly before the child was born. Thus, we conclude that the trial court erred in ruling that changing the child's name was in her best interest.

Accordingly, we will reverse the judgment of the trial court and remand the case with directions that the order appealed from be vacated, expunged, and stricken from the records of the trial court and from the records of the State Registrar of Vital Records.

*Reversed and remanded.*