Present: Carrico, C.J., Compton,[*] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

LINDA ROWLAND

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 990923                    March 3, 2000

EDWARD DAVID SHURBUTT

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Russell I. Townsend, Jr., Judge

This is the appeal of an order granting a natural father's petition to change the surname of his minor child. The central issue is whether the evidence is sufficient to support the trial court's ruling.

The facts, considered during a March 1998 hearing, are not disputed. The only testimonial evidence presented was the deposition of a psychiatrist, who had been employed by the father.

The child, a male, was born in Norfolk on September 3, 1991. His mother, residing in Chesapeake, is appellant Linda Grant Rowland. His father, residing in Virginia Beach, is appellee Edward David Shurbutt.

When the child was conceived, the mother was not married to the father and was separated from her spouse. When the child was born, the mother and her husband had reconciled and the child was given the surname "Rowland," a name he still carries.

_____
[*] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on

Since birth, the child has been in the physical custody of his mother. Court orders provide, however, that both parents have "joint legal custody" of the child. The parents have been litigating issues concerning child custody, child support, and visitation most of the child's life.

In March 1998, the father filed duplicate petitions in the court below to change his child's surname to "Shurbutt." The father asserted that he desired to change the name in order "to prevent confusion and difficulty in the transaction of the minor child's lawful affairs" and that the name change would be in the child's best interest. The mother objected to the proposed change.

Following the hearing, the trial court concluded that the child's best interest would be served by granting the father's petition. In a February 1999 order, from which we awarded the mother this appeal, the court ruled that the child's name be changed as requested, finding that "good cause was shown for this action." The court also ruled, however, that the child's name remain unchanged pending appeal.

On appeal, the mother contends that the trial court erred in ordering the name change because the evidence was insufficient to support the order. The father, while contending

February 2, 2000.

2

the evidence was sufficient to support the order, also argues that this Court is without jurisdiction to consider the appeal.

We shall address the jurisdictional question first. Although not argued orally, the father contends on brief that the Court of Appeals of Virginia, not this Court, has jurisdiction of this appeal. He points out that Code § 17.1-405(3)(e) provides that appeals of circuit court orders relating to the "control or disposition of a child" must be made to the Court of Appeals. This is such a proceeding, he says, and the appeal should be dismissed. We do not agree.

Ordinarily, a proceeding under the change-of-name statute, Code § 8.01-217, is an independent civil action. But see Code § 20-121.4 (permitting divorce court to restore party's former name as part of final decree of divorce from bond of matrimony). Although the present matter, brought as a separate proceeding detached from any custody or support litigation, obviously relates to a child, it does not involve the "control or disposition of a child," within the meaning of Code § 17.1-405(3)(e).

An order in an independent civil action changing a name, including that of a child, is "a final judgment" in a "civil case," within the meaning of Code § 8.01-670(A)(3), which provides for appeal of such an order to this Court. Thus, we properly have taken jurisdiction in this matter.

3

We shall now turn to the central issue, that is, whether the evidence was sufficient to support the name change.

As pertinent to this proceeding, Code § 8.01-217 provides that any person desiring to change his child's name may apply to the appropriate circuit court, "which shall consider such application if it finds that good cause exists therefor under the circumstances alleged." The statute further provides that when both of the child's parents are living and when the parent who does not join in the application objects to the proposed change, "a hearing shall be held to determine whether the change of name is in the best interest of the minor." The statute further provides that unless the court finds that the change of a minor's name "is not in the best interest of the minor," the court shall "order a change of name."

We have interpreted these statutory provisions to mean that the burden is upon the petitioning parent, under the circumstances of this case, to prove by satisfactory evidence that the change is in the child's best interest. Beyah v. Shelton, 231 Va. 432, 434, 344 S.E.2d 909, 911 (1986); Flowers v. Cain, 218 Va. 234, 237, 237 S.E.2d 111, 113 (1977).

As we examine the facts, it must be remembered that because the evidence before the trial court on the subject of the child's best interest was in the form of a deposition, and the court did not see and hear the witness, the court's finding of

4

fact, while highly persuasive and entitled to great weight, is not binding on us. Johnson v. Insurance Co. of N. Am., 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986); Kaplan v. Copeland, 183 Va. 589, 593, 32 S.E.2d 678, 679 (1945).

A prolonged recitation of the psychiatrist's testimony, submitted by the father, is unnecessary. Prior to the March 1998 deposition, the physician had seen the child on three occasions, the father on eight occasions, and the father's present wife once. He had "never met" the mother or her husband. Additionally, the doctor had reviewed a "Social Services report" resulting from a "home study" that mainly dealt with the issues of custody and visitation.

When asked his opinion upon whether a change of name "would be in the child's best interest and what do you base your opinion on," the psychiatrist stated that he felt two issues were presented. First, a child "should be able to carry the name of both his parents." The "second issue," he said, relates to the father's role in the child's development.

The witness noted that the father "has been extensively involved with the child . . . being very much involved in his care and his education and . . . also has been a very good provider. He's accepted whatever economic responsibilities are there." Therefore, the doctor opined, "it should be very simple

5

that [the child] should carry the names of the parents that are biologically his parents."

The witness was asked whether it would be "harmful" to change the child's name in view of the fact that he had carried the name Rowland for more than six years. The doctor responded that it would not be a "problem" for the child, but that the "problem is going to be with the adults trying to accept whatever decision is made."

The witness said the child "has been able to merge very well with both sets of parents," noting that the child "has no difficulty dealing with" living in the primary custody of his mother and having regular visitation with the father. Noting that the mother and father "are very good parents," the doctor stated that the child is "probably the best balance[d]" of all the parties involved.

According to the witness, the child is a "very healthy kid"; he is "progressing normally," "interacting appropriately," and "maturing" both "[s]choolwise" and "socialwise."

Finally, the witness said that he did not "care" if the child's surname was "hyphenated," but that the father "has the right" for the child to carry his "last name."

We hold that the psychiatrist's testimony, and the record as a whole, fails to establish by satisfactory evidence that the change of name is in the child's best interest. The

psychiatrist's opinions, which either were nonresponsive to the issue or were contradictory, focused mainly on the father's "rights," only tangentially addressing the child's interests. Actually, the testimony supports the view that the child's best interest will be served if his name remains unchanged. With his present name, he is healthy, happy, developing normally in school and socially, and is the best balanced of all the parties.

Consequently, we conclude that the trial court abused its discretion in granting the name change. Thus, the order below will be reversed and the father's several petitions will be dismissed.

<u>Reversed and dismissed</u>.


JUSTICE KOONTZ, concurring in part and dissenting in part.

I concur with the majority's holding that this Court, and not the Court of Appeals of Virginia, has jurisdiction over this appeal. However, because I disagree with the majority's further holding that "the psychiatrist's testimony, and the record as a whole," fails to establish that the change of name in question is in the child's best interest and, therefore, that the trial court abused its discretion in granting the natural father's petition to change the surname of his child, I respectfully dissent.

7

The majority gives little, if any, consideration to the mandate of Code § 8.01-217 that unless the court finds that the change of a minor's name "is not in the best interest of the minor," the court shall "order a change of name." In the present case, the trial court was presented with a petition by the natural father to change the surname of his male child from Rowland, the stepfather's surname, to Shurbutt, the father's surname. The "record as a whole," carefully considered by the trial court, reflects that this father is not an "absentee" parent. As a result of numerous legal proceedings since shortly after the child's birth, the courts have awarded "physical" custody of the child to the mother and "joint legal custody" of the child to both parents. At the father's request, the child's birth certificate was amended in 1996 to reflect that Mr. Shurbutt is the child's natural father. The father visits regularly with the child, provides regular financial support for him, and is active in the child's school activities.

Moreover, it is undisputed that the child is aware that Mr. Shurbutt is his father and that Mr. Rowland is his stepfather. Indeed, the child calls Mr. Shurbutt "Dad" and Mr. Rowland "Pop." While the majority is critical of the testimony of the psychiatrist, he very clearly testified that the child should have the surname Shurbutt and should have had that name "from the day he was born." The psychiatrist reasoned that "the true

8

identity" of the child was important to the child, the change of name would be in the child's best interest because it would avoid difficulty in school, and "this is the time in [his] psychosexual development that [he needs] to be clear" concerning his identity.

Applying the above quoted portion of Code § 8.01-217, the trial court concluded that the child's surname should be Shurbutt rather than Rowland. The trial court exercised its discretion to make the child's surname and his birth certificate reflect the child's true identity. I cannot conclude that such was an abuse of judicial discretion under the particular circumstances of this case.

There are, however, additional reasons that prompt my dissent in this case. In Flowers v. Cain, 218 Va. 234, 237 S.E.2d 111 (1977), we acknowledged the proposition that a father's interest in having his child continue to use his surname is relevant to a determination of the child's best interest. Id. at 236, 237 S.E.2d at 113. While Flowers and subsequently Beyah v. Shelton, 231 Va. 432, 344 S.E.2d 909 (1986), address a change of name over the objection of a father, they both support the reasonable conclusion that absent "substantial reasons" to the contrary, it is in the best interest of a child to have the surname of his father rather than the surname of his stepfather. Although we have not

expressly stated it, the reason should be obvious.  A surname is the family name, it reflects who we are, our true identity, and unless there are substantial reasons to the contrary a child should always be permitted to use his father's family name rather than the family name of a stepfather.  Today the majority holding casts a shadow of doubt over the rationale of these cases.

The circumstances in the present case are merely the reverse of those in Flowers and Beyah.  There we prohibited a change of name over the objection of the father; here the father seeks a change of name to accurately reflect the child's true parentage.  In my view, the interest of this father in having his child use his surname is also in the best interest of his child and should be accorded the same consideration as the interests of the fathers in those cases.  Granting that consideration in this case, the child's surname should not remain "Rowland" over the father's objection.  In short, the trial court corrected what was wrong from the day the child was born and made it right.

Accordingly, I would affirm the judgment of the trial court.