IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned On Briefs July 28, 2011

## JEANETTE HILL v. MICHAEL LESTER HILL

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-03-990     J. Michael Sharp, Judge**

_____

**No. E2011-00611-COA-R3-CV-FILED-AUGUST 24, 2011**

_____

This is a post-divorce action. Appellant/Father, who is incarcerated for sexually abusing his step-daughter, appeals the trial court's: (1) grant of Appellee/Mother's petition to change the surnames of the two minor children that were born to the marriage; (2) denial of Appellant/Father's petition to grant him visitation with the minor children; and (3) entry of an order requiring Appellant/Father to execute a qualified domestic relations order to effectuate the trial court's award of assets as child support. Finding no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P. J., W. S., and DAVID R. FARMER, J., joined.

Michael Lester Hill, Pikeville, Tennessee, Pro Se.

Philip M. Jacob, Cleveland, Tennessee, for the appellee, Jeanette Hill.

### OPINION

Appellant Michael Lester Hill and Appellee Jeanette Hill were married on July 9, 1994. Two children were born to the marriage (d.o.b. 01/09/1995 and 01/30/1997 respectively). On or about October 17, 2003, Ms. Hill became aware that Mr. Hill had been molesting Ms. Hill's minor daughter (i.e., Mr. Hill's step-daughter) for approximately four years. Mr. Hill confessed this activity in writing to the local police on October 24, 2003.

On that same day, Ms. Hill filed a complaint for divorce against Mr. Hill. By Order of September 29, 2004, Ms. Hill was granted a divorce on the ground of inappropriate marital conduct. The trial court also denied Mr. Hill any parenting time and set child support.

After pleading no contest to the criminal charges filed against him, Mr. Hill was incarcerated for molesting his step-daughter; he remained incarcerated as of the date of the filing of this appeal.[1] On February 3, 2005, Mr. Hill filed a motion to terminate or suspend his child support obligation based upon his incarceration. By Order of October 6, 2005, the trial court divided the parties' marital estate and established child support. The trial court noted that Mr. Hill's incarceration was taken into account in its decision to award assets as child support. These assets included Mr. Hill's share of his 401k account. No appeal was taken from either the order granting the divorce, or from the October 6, 2005 order dividing marital assets and setting child support.

On April 23, 2008, Ms. Hill filed a petition to change her surname, as well as the surnames of the parties' minor children. Mr. Hill opposed the petition. On July 2, 2009, Mr. Hill filed a petition to reinstate his parenting time. We note that Mr. Hill was not granted visitation in the divorce proceedings; consequently, his petition to reinstate parenting time is a misnomer. We perceive that his petition constitutes a post-divorce motion to modify the parenting plan. Ms. Hill opposed this motion. On December 6, 2010, Ms. Hill moved the court to enter an order to compel Mr. Hill to execute a Qualified Domestic Relations Order ("QDRO") relating to the parties' final decree of divorce and specifically concerning the award of assets as child support.

All pending matters were heard by the trial court on February 1, 2011. On February 17, 2011, the trial court entered an order, which provides, in relevant part, as follows:

> [T]his Court finds that...it would be in the children's best interest to have their name changed and the children's name[s] shall be changed. The Court further f[inds] that it would be detrimental for the children to have any visitation with [Mr. Hill] and [Mr. Hill] shall immediately execute a [QDRO].

The Court made the following additional findings:

> 1. All three (3) children (including the child that has reached majority [i.e., the step-daughter]) were excellent witnesses, credible and well spoken.
>
> 2. Visitation with the Father will lead to the children becoming

---

[1] The criminal court proceedings are not a part of this appellate record. Although the exact charges against Mr. Hill are not indicated in our record, there is no dispute that Mr. Hill admitted to inappropriate sexual contact with his step-daughter, and that he is currently incarcerated because of his actions.

mad and sad.

3.  Visitation with the Father would harm the children socially and scholastically.

4.  The children were victims and witnesses of physical and sexual abuse.

5.  The Father admitted to his crimes against the step-daughter but denies the physical violence against the mother and sons.

6.  The children experienced the abuse, so much so, that the crimes were severe and heinous.

7.  Father continues to deny the abuse took place.

8.  Any visitation with the Father would be detrimental.

9.  If [Mr. Hill] fails to execute the [QDRO],the employer or holder shall execute a release pursuant to this Order and the previous orders of this Court . . . .

Mr. Hill appeals *pro se*, under a pauper's oath.  He raises six issues for review; however, the issues concerning the division of marital assets and the award of child support are not perfected in the instant appeal.  As noted above, Mr. Hill appealed neither the September 29, 2004 order granting the divorce, nor the October 6, 2005 order dividing marital assets and setting child support within thirty days of entry of those orders.  Tenn. R. App. P. 4(a).  Rather, the instant appeal arises from the trial court's order on post-divorce motions that were filed by the parties.  Accordingly, only those issues adjudicated in the February 1, 2011 hearing are properly before this Court on appeal.  *Id*.  We restate the perfected issues as follows:

1.  Whether the trial court erred in granting Ms. Hill's petition to change the minor children's surnames?

2.  Whether the trial court erred in denying Mr. Hill's request for visitation?

3.  Whether the trial court erred in ordering Mr. Hill to execute a QDRO?

-3-

We first note that we are cognizant of the fact that Mr. Hill is proceeding *pro se.* While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App.2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194–95 (D.C. Cir. 1983)). *Pro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere. *Hodges*, 43 S.W.3d at 920–21.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Whitaker*, 957 S.W.2d at 837; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

We further note that, although there is an excerpt from the divorce hearing (which is not the subject of the instant appeal), the appellate record contains no transcript of the evidence adduced at the February 1, 2011 hearing. It is the duty of the appellant to prepare a transcript, or in the event a transcript is not available, a statement of the evidence, conveying "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See* Tenn. R. App. P. 24(b)-(c). In the instant case, Mr. Hill filed a "Statement of the Proceedings;" this document, filed on April 20, 2011, purports to be a statement of the evidence filed under Tennessee Rule of Appellate Procedure 23(c).[2]

---

[2] Tennessee Rule of Appellate Procedure 23(c) provides:

> (c) Statement of the Evidence When No Report, Recital, or Transcript Is Available. If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the

(continued...)

Mr. Hill was not present at the February 1, 2011 hearing; however, in his statement, he avers that he was "able to listen to most of it via speakerphone." Despite the fact that Mr. Hill admits that, because he "did not know he would be required to produce a written statement of the proceedings," the statement is largely the result of his memory of the proceedings, it does not appear that Ms. Hill filed any objection to the April 20, 2011 statement of the evidence. Consequently, under Tennessee Rule of Civil Procedure 23(c), we will accept Mr. Hill's statement, and will consider those statements in reviewing the trial court's actions.

## Change of Children's Surnames

In a case similar to the one at bar, *In re Lackey*, No. 01-A-01-9010PB00358, 1991 WL 45394 (Tenn. Ct. App. April 5, 1991), the Middle Section of this Court addressed the question of whether a minor child's surname should be changed following the father's conviction for aggravated rape of a child. In affirming the trial court's decision to allow the change of surname, this Court stated, in pertinent part, as follows:

> Unlike other states, Tennessee does not provide a separate statutory procedure for changing a minor's name. However, Tenn. Code Ann. §§ 29-8-101, -105 are worded broadly enough to include both minors and adults. Thus, minors may use the general name change statutes if they desire judicial assistance in changing their name.
>
> In circumstances where a minor lacks the capacity to bring suit on its own, Tenn. R. Civ. P. 17.03 empowers the minor's parents, custodian, or legal guardian to sue or defend on the minor's behalf. In the absence of a statute to the contrary,

---

[2](...continued)
appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Tenn. R. Civ. P. 17.03 empowers [Mother] to file a name change petition on her daughter's behalf.

*                            *                            *

Decisions regarding changing a minor's name should be guided by the child's best interests. *Halloran v. Kostka*, 778 S.W.2d at 456; 57 Am. Jur .2d Name § 45 (1988). While courts have generally declined to change a minor's name solely to avoid insubstantial inconvenience or embarrassment to the child or the custodial parent, *Laks v. Laks*, 540 P.2d at 1279-80; *Flowers v. Cain*, 218 Va. 234, 237 S.E.2d 111, 113 (1977), they have approved name changes when doing so furthers the child's substantial interests.

Parental misconduct provides ample justification for changing a minor's name. *Halloran v. Kostka*, 778 S.W.2d at 456. Thus, courts have consistently approved name changes when a parent has committed a heinous or notorious crime that might stigmatize the child. *West v. Wright*, 263 Md. 297, 283 A.2d 401, 403 (1971); *In re Krcelic*, 90 Misc.2d 666, 395 N.Y.S.2d 382, 384-85 (1977).

[Father] has admitted that he stands convicted of the aggravated rape of a minor and that he is presently serving a twenty-year prison sentence. In light of the nature of his crime, the trial court apparently determined that it was substantially in his daughter's interests to permit her to change her name. The record supports the trial court's decision, and therefore, we have no basis for overturning it.

*In re Lackey*, 1991 WL 45394, at *1-2.

In the more recent case of *Conner v. King*, No. W2009-00511-COA-R3-JV, 2009 WL 3925164 (Tenn. Ct. App. Nov. 10, 2009), *perm. app. denied* (Tenn. May 11, 2010), this Court reiterated that the child's best interest is the primary criterion in decisions to change the child's surname:

The issue of whether to change a minor child's surname is subject to an analysis based upon concern for the child's

-6-

welfare. *In re A .C.S.*, No. M2008-898-COA-R3-JV, 2009 WL 348510, at \*2 (Tenn. Ct. App. Feb.12, 2009). "[P]aramount consideration must be given to what is in the best interest of the child, and the rights of the parents must yield to that concern." *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App.1989) (citing *Riddick v. Riddick*, 497 S.W.2d 740 (Tenn. Ct. App.1973); *Bevins v. Bevins*, 53 Tenn. App. 403, 383 S.W.2d 780, 783 (1964)). "The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests." *Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (citing *In re Petition of Schidlmeier*, 344 Pa. Super. 562, 496 A.2d 1249, 1253 (1985); *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex. Ct. App.1981)). Courts have generally declined to change a minor's name if only to avoid an insubstantial inconvenience or embarrassment to the child or the custodial parent, and they have approved name changes when doing so furthers the child's substantial interests. *In re Lackey*, No. 01A01-9010-PB-00358, 1991 WL 45394, at \*2 (Tenn. Ct. App. Apr.5, 1991) (citing *Laks v. Laks*, 25 Ariz. App. 58, 540 P.2d 1277, 1279-80 (1975); *Flowers v. Cain*, 218 Va. 234, 237 S.E.2d 111, 113 (1977)).

The *Conner* Court went on to outline several other factors to be considered in making the decision to change a child's name:

> Some factors to consider in determining whether changing the child's name will be in the child's best interest include:

> (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent[,] (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981); *Bobo v. Jewell*, 528 N.E.2d [38 Ohio St.3d 330, 528 N.E.2d 180, 185

-7-

> (1988) ]; ***Daves v. Nastros***, 105 Wash.2d 24, 711
> P.2d 314, 318 (1985).
>
> ***Barabas***, 868 S.W.2d at 287. Although these criteria "may offer
> a court guidance" in determining whether a name change would
> be in the child's best interest, they "are not exclusive and
> obviously may not be relevant given the facts of a particular
> case." ***Keith v. Surratt***, No. M2004-01835-COAR3-CV, 2006
> WL 236941, at *8 (Tenn. Ct. App. Jan.31, 2006).

***Conner v. King***, 2009 WL 3925164, at *1-2.

In the instant case, the trial court specifically found that "it would be in the children's best interest to have their name changed." Given the nature of Mr. Hill's offense, and his plea and incarceration for same, we conclude that there is sufficient basis in the record to support the trial court's determination that changing the children's surname would be in their best interests. The information contained in Mr. Hill's statement of the evidence does not preponderate against the trial court's finding.

### Denial of Mr. Hill's Request for Visitation

As set out above, the September 29, 2004 order granting Ms. Hill a divorce also denied Mr. Hill any parenting time with the minor children. He did not appeal that order; rather, he filed a post-divorce petition to modify visitation, which was denied in the February 17, 2011 order that is the subject of this appeal.

"A custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made[.]" ***Scofield v. Scofield***, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing ***Young v. Smith***, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952); ***Steen v. Steen***, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); ***Solima v. Solima***, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); ***Long v. Long***, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972)). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." ***Id***. (citing Tenn. Code Ann. § 36-6-101(a)(1); *see **Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Subsections (B) and (C) to Tennessee Code Annotated § 36–6–101(a)(2) govern the modification of prior orders pertaining to parenting. In 2004, Subsection (C) was added to the statute to apply specifically to modifications in the residential parenting schedule.

Subsection (B) was amended to delete reference to modifications to the schedule, leaving it to apply only to modifications pertaining to custody, i.e., changing the designation of the primary residential parent. This Court has explained that the effect of the 2004 amendment was to create a lower threshold for establishing a material change in circumstances sufficient to warrant modification of the parenting schedule, but to leave unchanged the criteria for changing the designation of primary residential parent:

> As a result of the 2004 amendment, Tennessee now has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a "residential parenting schedule" and the specifics of such a schedule. The amendment, specifically the addition of subsection (a)(2)(C), establishes different criteria and a lower threshold for modification of a residential parenting schedule. However, the statutory criteria pertaining to a modification of "custody"—the term used in the statute, which we equate to the designation of "primary residential parent" and matters more substantive than a change of schedule—remain unchanged.

*Scofield v. Scofield*, No. M2006–00350–COA–R3–CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citations omitted).

Tennessee Code Annotated Section (a)(2)(C), pertaining to residential parenting schedules, states:

> If the issue before the court is *a modification of the court's prior decree pertaining to a residential parenting schedule*, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36–6–101(a)(2)(C) (emphasis added). The determination of whether a material change of circumstances has occurred requires a different standard depending upon whether a parent is seeking to modify custody ( i.e., change the primary residential parent) or modify the residential parenting schedule. *See, e.g.,* **Schreur v. Garner**, No. M2010–00369–COA–R3–CV, 2011 WL 2464180, at *4–5 (Tenn. Ct. App. June 20, 2011).

"We recognize that the circumstances of children and their parents inevitably change—children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." **Cosner v. Cosner**, No. E2007–02031–COA–R3–CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." **Id.** (citing **Cranston v. Combs**, 106 S.W.3d 641, 644 (Tenn.2003)). The following factors, however, are relevant: (1) whether the change occurred after entry of the order to be modified; (2) whether the change was known or "reasonably anticipated" when the previous order was entered; and (3) whether the change "affects the child's well-being in a meaningful way." **Kendrick**, 90 S.W.3d at 570 (quoting **Blair v. Badenhope**, 77 S.W.3d 137, 150 (Tenn. 2002)). "[A] parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well being." **Id**.

The analysis under either Subsection (B) or (C) of Tennessee Code Annotated Section 36-6-101(a)(2) is a two-step process. First, the parent who seeks to modify the existing parenting arrangement has the burden of proving the requisite material change in circumstances. **Taylor v. McKinnie**, No. W2007–01468–COA–R3–JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing **Kendrick**, 90 S.W.3d at 570). If a material change in circumstances has occurred, the trial court then must consider whether a change in the designation of primary residential parent, or of the parenting schedule as the case may be, is in the child's best interest, considering the factors in Tennessee Code Annotated Section 36–6–106(a). *See* **Boyer v. Heimermann**, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007).

Turning to the record in this case, the trial court made specific findings that "any visitation" would "harm the children socially and scholastically," and would make the children "mad and sad." These finding were based upon the court's additional finding that the children had been subjected to, or had witnessed, physical and sexual abuse on the part of Mr. Hill. In his brief, Mr. Hill attempts to delineate between physical visitation and visitation by letters or phone conversations. As set out above, the trial court specifically found that ANY visitation would be harmful to the children. The record in this case, including Mr. Hill's statement of the evidence, provides no basis for review of the harmful effects, if any, of all forms of visitation. Based upon the record before us, and the trial court's specific holding, we can only infer that the trial court found all visitation harmful.

-10-

In his petition for visitation, Mr. Hill argues that he was not made aware of the fact that the trial court had denied him visitation in its final decree of divorce. He further states that he has been rehabilitated during his time in prison and that he should be granted visitation so as to continue what, he claims, was a close relationship with the parties' two minor children. The trial court made a specific finding that the testimonies of the minor children (and the step-daughter) were credible. According to the statement of the evidence, Mr. Hill's step-daughter "served as a witness to Mr. Hill's bad character and actions...." Mr. Hill does not elaborate on her specific testimony or otherwise defend himself against her statements. The statement of the evidence further indicates that Mr. Hill's oldest son testified that he was angry with Mr. Hill for Mr. Hill's alleged failure to maintain contact with the children. Mr. Hill states that he tried to send letters and small gifts to the children, but that these offerings were intercepted by Ms. Hill. From the trial court's order, it does not appear that the lower court found Mr. Hill's allegation pursuasive.

From the record as a whole, Mr. Hill has not met his burden to show that there has been a material change in circumstances since the date of the final order of divorce that would make it in the children's best interests to engage in visitation with Mr. Hill. Rather, from the trial court's order, it appears that the children have voiced their desire to have no contact with Mr. Hill. Moreover, as found by the trial court, Mr. Hill continues to deny any abuse toward these children. This finding would seem to negate Mr. Hill's statement in his petition that he has been rehabilitated.

### Qualified Domestic Relations Order

As noted above, Mr. Hill has failed to preserve any appeal concerning the divorce, the division of the marital estate, or the order on child support. Consequently, his argument that the trial court erred in ordering him to enter into a QDRO involves only the narrow question of whether the trial court had the authority to issue such a mandate.

The purpose of a QDRO is discussed in 60A AM. JUR. 2d Pensions § 336 (2011) as follows:

> A "qualified domestic-relations order" (QDRO), which may serve as the basis for the assignment of pension benefits in spite of the antialienation provision of the Employee Retirement Income Security Act of 1974 (ERISA), is a domestic-relations order that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a

-11-

pension-plan participant, and that meets certain other requirements. A domestic-relations order is any judgment, decree, or order, including approval of a property settlement agreement, that relates to the provision of child support, alimony payments, or marital rights to a spouse, former spouse, child, or other dependent of a participant. In addition, it must be made under a state domestic relations law, including a community-property law.

*Id*. (Footnotes omitted).

Because Mr. Hill was incarcerated, the trial court ordered that his child support obligation be paid by assignment of Mr. Hill's assets, including his 401k. In order to effectuate that judgment, the trial court ordered Mr. Hill to execute a QDRO. As discussed in 30 AM. JUR. 2d Executions § 3 (2011):

Every court that has the jurisdiction to render a particular judgment has the inherent power to enforce it. A court has not only the right, but a duty to make its decrees effective, and prevent evasions thereof. The court should see to it that its judgment is enforced when the court is asked to do so by the issuance of the necessary orders and appropriate processes to make the judgment effective . . . .

*Id*. (Footnotes omitted).

Because of the nature of the judgment–i.e., that child support was awarded in asset form, we conclude that the trial court was within its authority to require Mr. Hill to execute a QDRO in order to accomplish the judgment.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are assessed to the Appellant, Michael Lester Hill, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE