COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and Lorish
Argued at Norfolk, Virginia


ZEPORAH SYKES

v.      Record No. 0809-22-1

TILO ALEXANDER

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
JULY 25, 2023


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. MacDonald, Judge

Zeporah Sykes, *pro se*.

No brief or argument for appellee.


Zeporah Sykes appeals the trial court's judgment granting Tilo Alexander's petition to

change the surname of their daughter, M.N.S.  We conclude that the evidence failed to establish that

the name change was in M.N.S.'s best interest.  Accordingly, we reverse the trial court's judgment,

vacate its order, and dismiss Alexander's petition.

BACKGROUND

We review the evidence in the light most favorable to the prevailing party below.  *Spero*

*v. Heath*, 267 Va. 477, 479 (2004).  Sykes and Alexander are the natural parents of a minor child,

M.N.S.  M.N.S. was a seven-year-old first grader when the parties appeared before the trial court

in March 2022 on Alexander's petition to change her surname.  Alexander testified that he

wanted to change his daughter's surname from Sykes to Alexander because of the "notoriety"

attached to Sykes.  He stated that he appeared on television after M.N.S. was "kidnapp[ed]."

M.N.S. and Sykes were later discovered in South America and returned to the United States, yet

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Alexander did not testify about the dates of their disappearance or return. No other details about this incident were provided to the trial court. While Sykes admitted that she had been charged with a criminal offense, she testified that the charge was still pending.[1]

Alexander did agree, however, that he pleaded no contest to assaulting Sykes in 2015. Alexander also agreed that a protective order had been issued against him from March 2015 to March 2016. Even so, Alexander was awarded sole legal and physical custody of M.N.S. in 2018, with visitation granted to Sykes on alternate weekends, six weeks during the summer, and one week each month in the event of school closure.

Alexander testified that his daughter's name had notoriety due to her disappearance and his efforts to locate her, but he conceded that that was "not the only reason" he sought a name change. He stated, "Just as her dad[,] I think she should share the [same] name with me" because "being part of my family and sharing my last name is in her benefit." Alexander noted that his son had a hyphenated surname and that, as an alternative to changing M.N.S.'s surname altogether, he would support a hyphenated surname for his daughter. At the end of Alexander's evidence, Sykes moved to strike Alexander's petition, asserting he had presented "zero evidence" that the name "Sykes" was detrimental to M.N.S. or that changing her name was in the child's best interest.

After the trial court denied the motion to strike, Sykes called Alexander as an adverse witness. He agreed that he could not name any "specific" times when M.N.S. had suffered detrimental consequences from the surname "Sykes," but he noted that others had asked M.N.S. about her kidnapping. Alexander also agreed that his television appearances were partially responsible for the notoriety attached to M.N.S.'s surname and that he had discussed the

---

[1] The record is silent regarding the nature of the criminal charge. Although the trial court and counsel referred to a criminal charge in a proposed Exhibit "B," Alexander never introduced the exhibit.

"kidnapping" with school personnel and social workers. He maintained that M.N.S. would "be better off" without the notoriety attached to the name Sykes. Alexander reiterated, however, that "it's strange for a first-grader to have a different last name than the rest of her family. I feel it's a bond among us, and that's a part of our culture, and I think it's the right thing and it benefits her."

After the evidence, Alexander argued that M.N.S.'s retention of Sykes as her surname would be "detrimental" to her based on the "notoriety" associated with it. He emphasized that M.N.S. knew "information [about her kidnapping] that was not disclosed by [him] . . . [and] presumably [was obtained] by speaking with somebody" or by searching the internet. Alexander maintained that "[t]he Court c[ould] . . . draw upon life experiences about how children behave in school" and that "[a]ny differences amongst children c[ould] be nitpicked or even bullied by other children." He asserted that M.N.S. would benefit from sharing his surname and that it was "culturally appropriate in our American culture to share the name of your father," especially since M.N.S. lived with him and he had sole physical and legal custody.

Sykes renewed her argument that Alexander had presented no evidence that M.N.S. would suffer substantial detriment by retaining her surname. She contended that Alexander's evidence established only "minor inconveniences" because he and his daughter did not share the same last name, emphasizing that children of divorced parents often had different surnames than their parents. Sykes asserted that Alexander's belief that M.N.S.'s surname carried notoriety was not sufficient to meet his burden and that, in any event, his own disclosures about the kidnapping proved that it was not a source of embarrassment.

In reaching its decision, the trial court ruled that it possessed broad discretion in deciding whether a petition for a child's name change was in the child's best interest, but four factors provided "guidance" in that determination: 1) whether the objecting parent "has abandoned the

natural ties of the ordinary relationship between child and parent," 2) whether the parent sharing the child's surname "has engaged in misconduct sufficient to embarrass the child in the continued use of the parent's name," 3) whether "the child will suffer substantial detriment by continuing to bear the parent's name," and 4) whether "the child is of sufficient age and discretion to make any intelligent choice."  It found that Sykes had not abandoned ties with her daughter and that factor four did not apply.  Limiting its consideration to only factors "two" and "three," the trial court found that "the minor embarrassment" from the child not sharing a surname with her father was not sufficient to warrant a name change; nor was Alexander's desire to participate in her naming, as alleged in his petition.  The court expressly refrained from making any finding about whether Sykes had kidnapped her daughter and cited no misconduct by Sykes in reaching its decision.

But based on the notoriety associated with her surname, the trial court held that changing M.N.S.'s surname from "Sykes" to "Alexander-Sykes" was in her best interest.  The trial court found that, while Alexander continued to refer to the kidnapping, he did so in "a relatively private setting" such as school records.  It found that "it's not a matter of publicity other than the fact that the father has testified upon [M.N.S.]'s return that he went back onto national television to do a thank you to the National Center [for Missing & Exploited Children]."  Sykes appeals.

## ANALYSIS

We review a trial court's decision to grant or deny a name change for abuse of discretion. *McMahon v. Wirick*, 288 Va. 197, 201-02 (2014).  "The parent petitioning to change the surname of the minor bears the burden of proving that the change is in the minor's best interest." *Spero*, 267 Va. at 479.  To meet that burden, a petitioning parent may show that:

> 1) The parent sharing his or her surname with the minor has "abandoned the natural ties ordinarily existing between parent and child,"

2) The parent sharing his or her surname with the minor "has engaged in misconduct sufficient to embarrass the [minor] in the continued use" of the parent's name,

3) The minor "otherwise will suffer substantial detriment" by bearing the surname he or she currently bears, or

4) The minor "is of sufficient age and discretion to make an intelligent choice and . . . desires that [his or her] name be changed."

*Id.* at 479-80 (alterations in original) (quoting *Flowers v. Cain*, 218 Va. 234, 236-37 (1977)).  As the Supreme Court has recognized, these factors are a "non-exclusive list of 'substantial reasons'" that constitute "prima facie evidence that [a] name change is in the child's best interest."  *McMahon*, 288 Va. at 201.  But the Court has reversed a trial court's name change where a parent failed to offer evidence "tending to show any of the criteria."  *Spero*, 267 Va. at 480.  The trial court may not authorize a name change "'merely to save . . . minor inconvenience or embarrassment' to the parent or the minor."  *Id.* (alteration original) (quoting *Flowers*, 218 Va. at 237).  To prevail, "the petitioning parent must demonstrate that '*substantial* reasons exist for the change.'"  *McMahon*, 288 Va. at 200 (emphasis added) (quoting *Flowers*, 218 Va. at 236).

The Supreme Court "has never held that it is fundamentally in a child's best interest to share a surname with a parent."  *Id.* at 202.  In *Spero*, the Court stressed that there is no "presumption that a child should have the father's surname."  267 Va. at 480.  It also rejected the father's argument that the mother's DUI conviction within a year of the child's birth "r[o]se to the level of misconduct sufficient to embarrass the child in the continued use of the [mother]'s surname."  *Id.*  In *McMahon*, the Court held that any confusion in school and medical settings over the child having her mother's surname, rather than that of her custodial father, was insufficient to prove that she had suffered "inconveniences or embarrassment, much less that she suffered 'substantial detriment.'"  288 Va. at 202.

Here, nothing in the record shows that Alexander presented "substantial reasons" supporting M.N.S.'s name change. The record shows that M.N.S. had her mother's surname for seven years, and the trial court found that Sykes had not abandoned ties with her daughter. To the contrary, the evidence proved that Sykes had been granted frequent visitation with her daughter. Although Alexander testified that Sykes had taken M.N.S. out of the country without permission, he also admitted that he had pleaded no contest to assaulting Sykes and that a protective order was issued against him. Alexander presented no evidence showing substantial embarrassment or other detriment that M.N.S. had experienced, or would experience, from publicity associated with the Sykes name.[2]

The trial court explicitly found that the first and fourth *Spero* factors did not govern its decision. As to the second factor, whether the non-petitioning parent had "engaged in misconduct sufficient to embarrass the child in the continued use of the parent's name," the trial court expressly refused to make a finding about whether any kidnapping had occurred and did not find that Sykes had engaged in misconduct sufficient to satisfy that standard. No evidence established that Sykes had been convicted of any crime as of the date of the hearing. Moreover, when the trial court referred to the third factor—whether "the child will suffer substantial detriment by continuing to bear the parent's name"—it stated, "I cannot know the future," and did not make any finding that M.N.S. would suffer "substantial detriment" by retaining her mother's name.

Guided by *Spero* and *McMahon*, we hold that the trial court abused its discretion by granting the petition to change M.N.S.'s name from "Sykes" to "Alexander-Sykes." Although the *Spero* factors do not constitute the exclusive reasons that a name change may be in a child's best

---

[2] *In re A.V.T-A.*, 100 Va. Cir. 408, 2018 WL 9393017 (Fairfax Cir. Ct. 2018), mentioned by the trial court in reaching its decision, is not binding on this Court, and the facts are also distinguishable. In that case, the evidence proved that the minor child was "inconsolable" and receiving therapy because she did not share the same surname as her other family members. *Id.* at *4.

interest, Alexander failed to offer evidence "tending to show any of the criteria," *Spero*, 267 Va. at 480, or "substantial reasons," *McMahon*, 288 Va. at 200 (quoting *Flowers*, 218 Va. at 236-37), that changing seven-year-old M.N.S.'s name was in her best interest. The trial court did not find that Sykes had engaged in misconduct, and even assuming that she had been convicted of a crime, the mere fact of a criminal conviction on its own would not justify a name change without evidence of how the circumstances relating to the conviction impacted the best interest of the child. *Spero*, 267 Va. at 480. Alexander presented no evidence that M.N.S. had suffered more than "minor embarrassment," or for that matter, any embarrassment, by retaining her surname. Accordingly, we reverse the trial court's judgment, vacate its order changing M.N.S.'s surname, and dismiss Alexander's petition.[3]

CONCLUSION

For the reasons stated, the trial court's judgment is reversed, vacated, and dismissed.

*Reversed, vacated, and dismissed*.

---

[3] "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Accordingly, because we reverse the trial court's judgment, we need not address Sykes's remaining assignments of error. In every family matter, circumstances may change, and this dismissal—without prejudice—does not foreclose Alexander from filing another petition in the future.