COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Huff and Malveaux
Argued by teleconference


CLIFTON ANTONY GRANT

MEMORANDUM OPINION* BY
v.      Record No. 0960-21-4            JUDGE RANDOLPH A. BEALES
                                        JUNE 28, 2022

TONI GAIL WALTERS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Clifton Antony Grant, *pro se*.

Paul A. Scott (Madigan & Scott, Inc., on brief), for appellee.
Appellee submitting on brief.


Clifton Antony Grant appeals an order of the Circuit Court of Fairfax County denying his

request to modify child custody and visitation.  In addition, he assigns error to the circuit court's

order denying his motion to hold Toni Gail Walters, the mother of their child, in contempt of court.

Furthermore, he also challenges the circuit court's refusal to change their child's last name and to

remove the restriction preventing Grant from noticing Walters for hearings on his motions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

Clifton Grant and Toni Walters were married on March 14, 2009. During the marriage, the couple had one child who was born on September 4, 2009. The parents had separated on June 28, 2009, and Walters petitioned the Fairfax County Juvenile and Domestic Relations District Court ("the JDR court") for custody of the child and child support. On July 15, 2010, the JDR court ordered that Grant pay child support to Walters. The JDR court on that day also granted Walters sole legal and physical custody of the child and ordered that Grant "shall have visitation at least one day each week, on a day and during such times as is determined by the mother and is agreeable with the father." Grant appealed the JDR court's orders to the Circuit Court of Fairfax County ("circuit court"), but the circuit court granted Walters's motion to dismiss the case on December 8, 2010.

On December 13, 2010, Grant filed motions in the JDR court requesting modifications to child support, custody, and visitation—all of which were denied. Grant appealed to the circuit court, which also denied Grant's motions for change in support and custody. The circuit court, however, modified the visitation arrangement to give Grant one additional weekend per month and one week during the summer because Walters had moved to Massachusetts to complete her education. In July and August of 2012, Grant again filed petitions in the JDR court requesting modification of child support, custody, and visitation—all of which the JDR court again denied. Grant appealed the JDR court's rulings to the circuit court. On October 28, 2013, the circuit court found that there had not been a material change of circumstances that would warrant a

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues Grant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

change in custody or child support and denied Grant's petitions on those issues. The circuit court also reduced Grant's visitation rights to the original terms of the JDR court's July 15, 2010 order because Walters had returned from Massachusetts to live in Virginia. The circuit court expressly retained jurisdiction over all future support, custody, and visitation matters in this case.

Since the circuit court issued its October 28, 2013 order, Grant has filed multiple motions for reconsideration with the circuit court—all of which the circuit court has denied—and he has appealed six of those decisions to this Court. On January 10, 2014, the circuit court, in responding to one of the motions filed by Grant, ordered that Grant "shall not place this proceeding on the Court's Motion Docket or file any further motions in this proceeding without first obtaining the specific leave of this Court." The circuit court explained that Grant's motion had "no basis in law or fact" and was filed "solely to harass the Petitioner and unduly increase litigation costs" for Walters.[2]

On April 16, 2021, Grant, representing himself, filed a "Motion for Contempt and Rule to Show Cause," in which he claimed that Walters should be held in contempt because she had "not determined a day when the father can have visitation with" their son "since September 2019." Grant's motion also requested that the circuit court grant him joint custody of the child, modify the visitation schedule, and change the child's last name from Walters to Grant. On April 27, 2021, Grant filed a "Motion to Amend Order," restating his request for joint custody and increased visitation based on "a material change in circumstance." Notably, neither of these two motions sought to amend his court-ordered child support payments.

---

[2] Grant has also been held in contempt of court repeatedly for failing to pay child support. The circuit court found that "[t]he evidence is undisputed that the Father, believing that he has paid enough, stopped paying any child support since October 1, 2016."

On July 8, 2021, the circuit court held a hearing on Grant's motions.[3]  On July 15, 2021, the circuit court issued a fifteen-page memorandum opinion and order discussing both the lengthy history of this case and its factual findings.  The circuit court made the following rulings.

First, the circuit court denied and dismissed with prejudice Grant's motion to amend custody and visitation because there had been no material change of circumstances that would warrant modification of the current arrangement.  The circuit court found Walters to be credible and Grant "presently unfit" as a father.  The circuit court further found that during Walters's testimony, which was "at times, tearful and exasperated recounting of past and recent events," Walters gave at least fifteen reasons why Grant was unfit to have joint custody, including claims that Grant failed to communicate properly with her, denied the child reliable contact with her, and disparaged her in front of the child.  The circuit court also concluded, "The testimony most impactful to the Court was the Mother's appeal to the Father about how over these past ten years she had expended considerable time and effort in preventing the child from disliking his own Father."  The circuit court concluded that Walters's testimony was "remarkably credible and marked with the appropriate level of emotional angst when certain issues were touched upon." In comparison, the circuit court found that Grant's "evidence was markedly absent of any positive evidence of how the Father could contribute to the best interest of the child."  As a result, the circuit court found that there had not been a material change of circumstances

---

[3] Although the January 10, 2014 order barred Grant from filing and holding hearings for motions without the approval of the circuit court, a hearing was still held on these motions.  The circuit court later explained, "The judges at Calendar Control hearings do not have easy access to the actual files and more importantly do not have the luxury of time to study the files to ensure whether a hearing should be set."

warranting modification of custody and visitation—and that joint custody was not in the child's best interests.[4]

Second, the circuit court denied Grant's "Motion for Contempt and Rule to Show Cause." The circuit court found that "the facts and legal principles submitted are insufficient to make out even a *prima facie* case for the Court to consider finding the Mother, the only fit parent before it, in contempt." As a result, the circuit court ruled that it "expands the word 'shall' to mean 'may' in the pertinent part of the October 28, 2013 Order and that visitation m[a]y occur only upon the exercise of the Mother's discretion." The circuit court explained that its decision would "eliminate the argument that if on any given week visitation does not occur that the Mother is in contempt of the Order."

Third, the circuit court ordered that "[t]he Court's 2014 Order that precluded the Father from setting or noticing the Mother for a hearing continues." The circuit court explained that the 2014 order "does not preclude the Father from filing a motion." Instead, that order "precludes the Father from noticing the Mother's appearance to a hearing . . . until such time as the Chief Judge of this Court or her designee determines the pleadings have stated facts sufficient to state a cause of action given the history of his case."

Finally, the circuit court denied Grant's request to change the child's last name. The circuit court concluded that the request to force the child to change the name that he has lived with since birth lacks merit.

---

[4] The circuit court found that "[e]ven if the Court finds that a material change of circumstance has occurred," that "[e]very factor under § 20-124.3, except for one inapplicable factor, overwhelmingly favors the Mother's exercise of sole legal and sole physical custody." The circuit court made extensive findings of fact under the factors in support of maintaining the current custody and visitation order. In short, the circuit court found, "There is no evidence the Father has done or desires to do anything to procure any cooperation from the Mother or seek compromise or even take small steps towards increasing co-parenting."

The circuit court entered an order denying all of Grant's requested relief on August 2, 2021. The circuit court did not make any ruling relating to child support, which was raised for the first time at the July 8, 2021 hearing.[5] Grant filed a motion for reconsideration, which the circuit court denied. Grant now appeals to this Court.

## II. ANALYSIS

Grant claims that the circuit court erred on ten separate grounds. In short, Grant asserts in these assignments of error that the circuit court erred by denying his requests for joint custody and increased visitation, for a reduction in child support, to change the child's last name, and to remove the restriction on his ability to notice Walters for a hearing. Grant's assignments of error will be addressed collectively in the way that he organizes them together in his brief. *See* Opening Brief ii.-iv.

A. Custody and Visitation (Assignments of Error Three, Four, Six, Seven, Eight, and Ten)

Grant argues that the circuit court erred in denying his motions to modify custody and visitation. Specifically, Grant contends that the circuit court erred by denying his motion to amend and its findings that he was an unfit parent.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Rhodes v. Lang*, 66 Va. App. 702, 708-09 (2016) (quoting *Farley v. Farley*, 9 Va. App. 326, 327-28 (1990)). "In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 228 (2019) (quoting *Parish v. Spaulding*, 26 Va. App. 566, 570-71 (1998)); *see also Keel v. Keel*, 225

---

[5] Grant's written motions did not include a request to modify the child support award, but he argued at length at the July 8, 2021 hearing that child support was incorrectly calculated in the July 15, 2010 order.

Va. 606, 611 (1983). "Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." *Denise v. Tencer*, 46 Va. App. 372, 395 (2005) (quoting *Ohlen v. Shively*, 16 Va. App. 419, 423 (1993)). As the party requesting the change to custody and visitation, father had the burden of proving that a material change of circumstances had occurred. *See id.* at 396 (the party seeking to modify custody and visitation has the burden of proving that a material change of circumstances occurred since the entry of the last order). "In the absence of a material change in circumstances, reconsideration . . . would be barred by principles of *res judicata*." *Sullivan v. Knick*, 38 Va. App. 773, 782 (2002) (alteration in original).

In deciding Grant's third, seventh, eighth, and tenth assignments of error,[6] there is overwhelming credible evidence in the record to support the circuit court's determination that there has been no material change of circumstances. Walters explained to the circuit court that she had at least fifteen issues with Grant's current fitness as a father, including his disparagement of Walters in front of the child and Grant's issues with proper communication. The circuit court found, "The testimony most impactful to the Court was the Mother's appeal to the Father about how over these past ten years she had expended considerable time and effort in preventing the child from disliking his own Father." The circuit court concluded that Walters's testimony was "remarkably credible and marked with the appropriate level of emotional angst when certain issues were touched upon." In addition, while "[t]he intentional withholding of visitation of a child from the other parent *without just cause may* constitute a material change of circumstances

---

[6] Grant's third assignment of error states, "Trial court erred in denying the father motion to amend and approving motion to strike." His seventh assignment of error states, "Trial court erred in questioning the ability of a judge to continue or set a hearing." His eighth assignment of error states, "Trial court erred in implying the father is presently unfit." Grant's tenth assignment of error states, "The defendant is being denied due process and equal protection under the law."

justifying a change of custody *in the discretion of the court*," the record in this case demonstrates that Walters had not withheld the child from Grant, who had not called or requested visitation between September 2019 and March 2020. Code § 20-108 (emphases added).

For Grant's sixth assignment of error ("Trial court erred in treating the father's and the mother's statement and allegation differently"), the circuit court needed to make factual findings to determine if there was a material change of circumstances when deciding Grant's motion to modify child custody and visitation. *See Denise*, 46 Va. App. at 395. In addition, Grant argues in his fourth assignment of error that the "[t]rial court erred in expanding the word 'shall' to mean 'may'" because "[w]ith this order, father will not be able to file a rule show cause when the mother alienates the father from the child by denying visitation thus denying the father access to the courts." However, while Grant raised seventeen written objections to the circuit court's August 2, 2021 order, he did not include any objection to the circuit court's ruling that expanding the word "shall" to mean "may" was necessary to clarify the existing visitation arrangement. Consequently, Grant has not preserved this issue for appeal. *See* Rule 5A:18. Therefore, for all of these reasons, this Court does not disturb the circuit court's ruling denying Grant's motion to modify child custody and visitation.

B. Child Support (Assignments of Error One, Two, and Ten)

Although Grant has three assignments of error[7] relating to child support, the circuit court in both its July 15, 2021 memorandum opinion and order and its August 2, 2021 order did not make any ruling on child support. Grant did not raise child support in his initial written motions,

---

[7] Grant's first assignment of error states, "Trial court erred in not correcting the clerical error or fraud upon the court that altered the order of the court when it was brought to the court attention." Grant's second assignment of error states, "Trial court erred in not recalculating the child support award to make it in line with the child support order, when it was brought to the court attention." Grant also argues that his tenth assignment of error, discussed *supra*, applies to child support in addition to child custody and visitation.

and the circuit court did not make any ruling on the child support arguments in the orders currently before this Court. As a result, this Court cannot reach these assignments of error pertaining to child support because we do not have a circuit court ruling on it presently before us. *See Duva v. Duva*, 55 Va. App. 286, 299 (2009) ("Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal."); *Lostrangio v. Laingford*, 261 Va. 495, 497 n.2 (2001) ("The trial court made no ruling with respect to the Town's demurrer and, accordingly, we will not address that issue in this appeal.").

## C. Name Change for the Child (Assignment of Error Nine)

Grant argues in his ninth assignment of error that the "[t]rial court erred in not changing the child last name and that the change lacks merit." "Under Code § 8.01-217, the parent seeking to change a child's surname over the objection of the other parent bears the burden of proving that the name change is in the child's best interest." *McMahon v. Wirick*, 288 Va. 197, 200 (2014). "[T]o prove that the name change is in the child's best interest, the petitioning parent must demonstrate that 'substantial reasons exist for the change.'" *Id.* (quoting *Flowers v. Cain*, 218 Va. 234, 236 (1977)). "[W]e will only reverse a trial court's decision to grant or deny a name change upon a showing that the trial court abused its discretion." *Id.* at 201-02.

Here, the circuit court found no reason to change the child's last name, which has been "Walters" since his birth. The record does not demonstrate that Grant has provided a substantial reason for a name change. Although Grant's argument appears to rely on the idea that the child would inherently benefit from sharing his last name, Grant conceded at oral argument before this Court that the child's last name has been Walters since birth. As a result, we certainly cannot say that the circuit court abused its discretion in denying Grant's motion at this point to change the now twelve-year-old child's last name.

D.  Filing Restriction (Assignment of Error Five)

Grant argues in his fifth assignment of error that the "[t]rial court erred in continuing the court's 2014 Order that precluded the father from setting or noticing the mother for a hearing." The Supreme Court has stated that a court "must . . . protect its jurisdiction from repetitious and harassing conduct that abuses the judicial process." *Madison v. Bd. of Supervisors of Loudoun Cnty.*, 296 Va. 73, 76 (2018).

> As the United States Supreme Court has noted, "[e]very paper filed with the Clerk of this court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources.  A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice."

*Id.* (quoting *In re McDonald*, 489 U.S. 180, 184 (1989)).

> In determining whether a pre-filing injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 77 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

Since the circuit court's October 28, 2013 order, Grant has filed multiple motions for reconsideration, which the circuit court denied, and appeals to this Court.  As a result, the circuit court restricted his ability to schedule a hearing on his motions until it "determines the pleadings have stated facts sufficient to state a cause of action given the history of his case."  This restriction does not prohibit Grant from filing new motions or prevent his access to the court. Instead, the restriction was intended to avoid unnecessary hearings to the detriment of Walters. Under the circumstances of this case, we conclude that the circuit court did not abuse its discretion in continuing to restrict Grant's ability to notice Walters for a hearing.  *See Switzer v. Switzer*, 273 Va. 326, 333 (2007) (noting that "leave of court" requirements have been "widely

- 10 -

approved on appellate review" because they ensure that the filing "is not frivolous or filed for the purpose of harassing the opposing party or the court").

## III. CONCLUSION

For all of the foregoing reasons, we do not disturb the ruling of the circuit court.

*Affirmed.*